# COMPLAINT

### (for filers who are prisoners without lawyers)

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2019 JUL 24 P 2: 18

STEPHEN C. DRIES
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

(Full name of plaintiff(s))

William B. Shaw

_____

_____

v.

(Full name of defendant(s))

City of Milwaukee ; Chief Edward Flynn ;

Deputy Inspector Terrence Gordon ; Lieutenant Phil Henschel ;

Sergeant Timothy A Hauf ; Police Officer Michael Antoniak ;

Police Officer Kristopher Maduscha ; Police Officer Thomas J Slowinski ,
INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY MILWAUKEE POLICE
DEPARTMENT OFFICERS OF MILWAUKEE COUNTY

Case Number:

## 19-C-1059

(to be supplied by Clerk of Court)

## A.  PARTIES

1.  Plaintiff is a citizen of ___Milwaukee , Wisconsin___ , and is located at
(State)

___949 N 9th St., Milwaukee , WI 53233 Milwaukee County Jail___
(Address of prison or jail)

(If more than one plaintiff is filing, use another piece of paper.)

2.  Defendant _____
(Name)

Complaint – 1

— ADDITIONAL DEFENDANTS

Wheaton Franciscan Health care — St. Francis ; Physician Assistant Daniel Teska, Unknown Employer of Physician Assistant Daniel Teska ; Unknown Radiologist or X-Ray technician ; Unknown Milwaukee Police Department employees and officers ; (Defendants) and (Defendant Officers) are being sued individually and in their official capacities .

## INTRODUCTION

On information and belief, all or most of the parties reside or resided in Milwaukee County when this incident occurred, and the events giving rise to the claims asserted herein all occurred within the district.

3). This action is brought pursuant to 42 U.S.C. §§ 1983 and the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution and also the unreasonable search and seizure clause of the Fourth Amendment to the United States Constitution to redress the deprivation under color of law of Plaintiff William R Shaw's rights as secured by the United States Constitution.

4). Plaintiff William R Shaw is a resident of Milwaukee and when this incident occured he was a full time student at Milwaukee Area Technical College pursuing his Associates Degree in Business Management.

5). The City of Milwaukee is a Wisconsin municipal corporation with it's principal place of business in Milwaukee, Wisconsin.

6). Defendant Edward Flynn was at the time of the series of searches, Chief of the Milwaukee Police Department, acting under color of law within the meaning of 42 U.S.C. §1983 and within the scope of his employment within the meaning of §895.46, Wis. Stats. Defendant Flynn is being sued both individually and his official capacity.

7). Defendant Terrence Gordon was at the time of the series of searches and or still is, Deputy Inspector of the Milwaukee Police Department, at all times relevant to this action was acting under color of law within the meaning of law within the meaning of 42 U.S.C. §1983 and within the scope of his employment within the meaning of §895.46, Wis. Stats. Defendant Gordon is being sued—

– both individually and in his official capacity.

8). Defendant Phil Henschel was and/or still is a Lieutenant of the Milwaukee Police Department at all times relevant to this action was acting under color of law within the meaning of 42 U.S.C. §1983 and within the scope of his employment within the meaning of §895.46 Wis. Stats. Defendant Henschel is being sued both individually and his official capacity.

9). Defendant Timothy A Hauf, at the time of the series of searches, was and/or still is a Sargeant of the Milwaukee Police Department and at all times relevant to this action, was acting under color of law within the meaning of 42 U.S.C. §1983 and within the scope of his employment within the meaning of §895.46, Wis. Stats. Defendant Hauf is being sued both individually and in his official capacity.

10). Defendant Officers Michael Antoniak, Kristopher Maduscha, and Thomas J Slowinski at all times relevant to this action, was acting under color of law within the meaning of 42 U.S.C. 1983 and within the scope of their employment within the meaning of 895.46 Wis. Stats. Defendants Antoniak, Maduscha, and Slowowinski are being sued both in their individual and official capacities.

11). Defendant Wheaton Franciscan Healthcare – St. Francis is a body corporate organized under and pursuant to the laws of Wisconsin and its address is Wheaton Franciscan Healthcare – St. Francis 3237 S. 16th Street Milwaukee, WI 53215 and its Corporate Office address is Wheaton Franciscan Healthcare 400 W. River Woods Parkway Glendale, WI 53212. At all times relevant to this action, was acting under color of law within the meanining of 42 U.S.C. 1983 and within the scope of their employment within the meaning of 895.46 Wis. Stats.

12). Defendant Daniel Teska at all times relevant to this action, was acting under color of law within the meaning of 42 U.S.C. 1983 and within the scope of his employment within the meaning of "895.46, Wis. Stats.
Defendant Teska is being sued both in his individual and official capacity.

13). Unknown Defendant Employer of Physician Assistant Daniel Teska who at all times relevant to this action, was acting under color of law within the meaning of 42 U.S.C. 1983

14). Unknown Defendant Officers are current and/or former employees, officers, and or supervisors of the Milwaukee Police Department who at all times relevant to this action was acting under color of law within the meaning of 42 U.S.C. 1983 and within the scope of their employment within the meaning of "895.46 Wis. Stats
Defendants are being sued both in their individual and official capacities.

15). Unknown Defendant Radiologist or X-Ray technician who at all times relevant to this action was acting under color of law within the meaning of 42 U.S.C. 1983 and within the scope of his employment within the meaning of "895.46 Wis. Stats and is being sued both individually and in his official capacity.

is (if a person or private corporation) a citizen of <u>Wisconsin</u>

(State, if known)

and (if a person) resides at <u>On information and belief, all or most of the parties reside</u> <u>or had resided in Milwaukee County when this incident occurred.</u>   (Address, if known)

and (if the defendant harmed you while doing the defendant's job)

worked for <u>Milwaukee Police Department / Wheaton Franciscan Health care - St. Francis</u>
3006 S. 27th St.   and      (Employer's name and address, if known)
749 W. State St.          3237 S. 16th St. Milwaukee WI 53215
Milwaukee WI
(If you need to list more defendants, use another piece of paper.)

B.      STATEMENT OF CLAIM

On the space provided on the following pages, tell:
1.      Who violated your rights;
2.      What each defendant did;
3.      When they did it;
4.      Where it happened; and
5.      Why they did it, if you know.

16). On February 27, 2014 at approximately 9:28 PM William R Shaw was in his fathers vehicle, with then, girlfriend Heather Parker who was the front seat passenger, and her friend Shannon L Hajek who sat in the back seat, directly behind the front seat passenger (Parker), when he was stopped by officers Antoniak and Maduscha for an alleged traffic violation on the 3100 block of South 9th Place Milwaukee, WI.

17). Mr. Shaw had not committed any traffic violation. Rather, officers Antoniak and Maduscha used an alleged traffic stop to search Mr. Shaw's person, the two passengers, and the vehicle without probable cause.

Complaint – 2

18). Officers Antoniak and Maduscha approached the vehicle; requested the names of the occupants, and then ordered Mr. Shaw out of the vehicle.

19). Mr. Shaw repeatedly asked officers Antoniak and Maduscha why they had stopped him, but they refused to answer Mr. Shaw's questions.

20). Mr. Shaw was made to exit the vehicle. Officers Antoniak and Maduscha put him up against the vehicle very aggressively.

21). Officer Antoniak then searched Mr. Shaw by pat searching him, going into his pockets, checking his waste band, and the base of his pant legs.

22). No contraband was found on Mr. Shaw.

23). Defendant Officers then arrested Mr. Shaw and placed him in back of their police car, falsely claiming Mr. Shaw's probation officer had previously placed a detainer on him, with no other explanation.

24). However, the Defendant officers hadn't contacted the Department of Corrections until after Mr. Shaw was arrested, detained and the search of the vehicle occurred.

25). Officers Antoniak and Maduscha then walked back to the vehicle, and ordered the remaining two occupants to exit, and began an unconsented search of said vehicle.

26). As a result, Ms. Parker was released on scene, and Hajek was arrested and taken into custody for having concealed in her purse, a drug kit, with 17 corner cut bags containing reminants of an unknown powdery substance believed to be heroin by Defendant Officers.

27). All unbeknowst to Mr. Shaw, who had just met Ms. Hajek for the first time, after just picking her up, merely 30 minutes prior to being stopped by Defendant Officer's Michael Antoniak and Kristopher Maduscha.

28). Ms. Hajek and Mr. Shaw were both transported to District 6 of the Milwaukee Police Department in separate police vehicles, located at 3006 S. 27th St. Milwaukee, WI

29). After being processed and booked into the station, Mr. Shaw was again searched, with no contraband being found on him, and placed into a holding cell.

30). Shortly-thereafter, Mr. Shaw was startled awake by officers, who immediately handcuffed him and led him to a wet cell with no door and placed him inside, with an officer at the entrance of the door to maintain observation of him.

31). Mr. Shaw was then approached by a Sergeant of the Milwaukee Police Department who's name is unknown, who informed Mr. Shaw that the female backseat passenger Shannon L Hajek, who was arrested; specifically stated: "that he Mr. Shaw had drugs concealed inside of his rectum", to himself and other officers.

32). However, according to the police reports Shannon L Hajek falsely reported to officers that Mr. Shaw only had placed drugs down his pants with his right hand", with no mention of putting anything into his rectum or buttox.

33). After Mr. Shaw vehemently denied having any drugs or contraband on his person, concealed or otherwise several times, the unknown police Sergeant became very angry and hostile with Mr. Shaw; posing an intimidating question to Mr. Shaw stating: "do you want to do this the easy way or hard way".

34). Not recieving the desired response he had anticipated, the unknown police sergeant erectly stood up on his feet and pointed his finger at Mr. Shaws face and stated that "he (Shaw) would be sorry for this".

35). Mr. Shaw was then transported by officers Michael Antoniak and Kristopher Maduscha to the Milwaukee Police Administration Building located Down Town Milwaukee also known as the First District located at 749 West State Street, Milwaukee, WI 53233

36). Again Mr. Shaw was searched, once inside of the Police Administration Building by officer Thomas J Slowinski.

37). No contraband was found on Mr. Shaws person.

8). 45 minutes to an hour later Mr. Shaw was taken down the hallway to room 520 located at the Central Booking Section by officer Kristopher Maduscha who had maintained constant observation of Mr. Shaw during this incident.

9). Mr. Shaw was then deposited into room 520 at or around 4:25 AM on the date of 2/28/14 with officer Thomas J Slowinski and Sergeant Timothy A Hauf, who was already present inside the room.

10). Defendant officer Kristopher Maduscha left out of the room after uncuffing Mr. Shaw.

11). Plaintiff Mr. Shaw was then immediately ordered to remove all of his clothing, to be completely disrobed, so that he was nude, and to give each article of clothing to and by Defendant officer Thomas J Slowinski; without further explanation.

12). Mr. Shaw was made to give each article of clothing to Defendant officer Thomas J Slowinski, as officer Slowinski recieved Mr. Shaw's clothing, he began identifying each article of clothing with a hand-held audio recording device, while Defendant Sgt. Timothy A Hauf observed in silence and did not itervene.

13). With accordance to Wisconsin State Statutes strip searches can not be conducted if it is reproduced by audio or video recording.

14). Officer Thomas J Slowinski then aggressively ordered Mr. Shaw to lift his scrotums and penis, as Mr. Shaw was doing so, Defendant officer Slowinski continued to speak into the hand-held audio recording device:

45). After this, officer Thomas J Slowinski ordered Mr. Shaw to turn around and bend over.

46). Mr. Shaw complied with said orders out of fear and itimidation.

47). After doing so Defendant officer Slowinski ordered Mr. Shaw to "spread his buttox apart"

48). As Mr. Shaw was complying with the order to spread his buttox, officer Thomas J Slowinski kept repeatedly yelling at Mr. Shaw, ordering him to spread his buttox further and further until Mr. Shaws anus was fully exposed.

49). All while both Defendant officer's Thomas J Slowinski and Sergeant Timothy A Hauf tilted their heads to the side, with bended knees, scrutinizing each intimate private area of Mr. Shaw, including his fully exposed anus.

50). Mr. Shaw related to Defendant officers Slowinski, and Sergeant Hauf that his anus and buttox were in pain from spreading so far apart, at which point officer Slowinski stated that; "it wasnt good enough", after repeatedly yelling at Mr. Shaw to spread his buttox further and further.

51). The Plaintiff Mr. William R Shaw was then ordered to put his clothing back on; while dressing, Mr. Shaw noticed that infact there was a surveillance camera inside of room 520 and that Defendant officers had deliberately ensured he was positioned in full veiw of the surveillance camera while the strip search that turned into a visaul body cavity search was conducted on him.

52). Upon information and belief, Mr. Shaw was being visaully recorded and observed through the surveillance camera that was located inside of room 520 at the Central Booking Section during above said searches by Defendant officers Michael Antoniak, Kristopher Maduscha and others, without Mr. Shaws knowledge or consent additionally niether Antoniak nor Maduscha or any other employees of the Milwaukee Police Department had intervened or attempted to interven during the unreasonable series of searches Mr. Shaw was subject to.

53). Before or after said searches occurred, Mr. Shaw was not provided with a copy of the "Written authorization" that was required to be obtained by Deputy Inspector Terrence Gordon to conduct a strip search as required by Wis-s.s. 968.255 (d) (e) (d), nor did Mr. Shaw provide consent for a strip and or a visaul body cavity search to be conducted on him.

54). Officers Thomas J Slowinski, Michael Antoniak, Kristopher Maduscha and Sgt. Timothy A Hauf had known or reasonably should have known that even if Defendant Deputy Inspector Terrence Gordon had provided authorization to conduct a strip search on Mr. Shaw that "written authorization" was reqired in order to have been in compliance with the law and the standard of operation procedures of the MPD and in order to even conduct the search.

55). Defendant Deputy Inspector Terrence Gordon had known and or reasonably should have known even if he had provided oral authorization to Defendant officers to conduct a strip search on Mr. Shaw; that by officers acting upon his oral authorization, without properly obtaining a "written authorization" as legally required would deprive Mr. Shaw of his constitutional rights.

56). Upon information and belief, pursuant to official policy, custom and usage Plaintiff William B. Shaw was subjected to a very intrusive unauthorized dehuminizing "visaul body cavity search" inside of room 520 at the Central Booking Section, and while he was in full view of a surveillance camera, which was an explicitly - commonly utilized, and specifically designated as a strip search area and was a wide-spread practice utilized throughout the Milwaukee Police Department.

57). Upon information and belief, pursuant to official policy, custom and usage, Deputy Inspector Terrence Gordon had known or should have known about officers engaging in improper searches, and facilitated, approved, condoned turned a blind eye to, and or purposefully ignored the continued exploitation of arrestees being subjected to various degrees of nude searches including but not limited to strip searches and visual body cavity searches in full view and or in the presence of a video surveillance camera, while being visually observed and recorded through the same inside of room 520 at the Central Booking Section, well known throughout the MPD to have been specifically designated for above said searches.

58). Upon information and belief, pursuant to his official policy, custom and usage, Defendant Chief Edward Flynn had known or should have known about the officers engaging in improper searches, and facilitated, approved, condoned, turned a blind eye to, and or purposefully ignored the continued exploitation of arrestees being subjected to various degrees of nude searches including but not limited to strip searches and visual body cavity searches in full view and or in the presence of a video surveillance camera, while being visually observed and recorded through the same inside of room 520 at the "Central Booking Section" well known throughout the MPD to have been specifically designated for above said searches, in which Mr. Shaw was transported from the 6th District Police Station to the Police Administration Building in accordance with Flynns policy, custom and usage of the same of conducting said searches inside room 520.

59). Moreover, even if appropriate authorization was aquired to conduct a strip search on Mr. Shaw; it was objectively unreasonable for Defendant officers Slowinski, Antoniak, Maduscha, and Hauf to have concluded that authorization to conduct a strip search included anything beyond the removal of Mr. Shaws cloths inorder to inspect his naked body, but without scrutinizing his body cavities i.e., a (visual body cavity search), especially in full view of a video surveillance camera in a room 520 at the Central Booking Section, where there was known to be video equipement present.

A). before the visaul body cavity search was conducted Mr. Shaw was not provided with a copy of a report that should have been prepared by the person conducting the search containing the "written authorization" that should have been obtained from Defendant Terrence Gordon as required by law.

(B). the visaul body cavity search that was conducted on Mr. Shaw was in fact conducted in room 520 at the "Central Booking Section" where there was known to be the presence of video equipment contrary to the law; that explicitly prohibits strip searches in the "Booking Room" due to the presence of video equipment.

(C). Defendant Deputy Inspector Terrence Gordon had known or reasonably should have known that the search was going to be conducted in room 520 at the Central Booking Section where the presence of video equipment was known to be; because officer Michael Antoniak had contacted Terrence Gordon to obtain authorization, and was required to inform him of the location where the search was to take place and who was going to be conducting it.

(D). the agreement between Defendants Antoniak and Gordon was that Mr. Shaw be arrested for a drug offense; then he (Gordon) would provide "authorization" for the search.

E). On September 30, 2015 police Sergeant William C. Walsh of the Milwaukee Police Department Internal Affairs Division while investigating Mr. Shaw's complaint against Defendant officers, went to Central Booking to inspect room 520 at the Police Administrative Building located down town Milwaukee, WI., And was informed by Lieutenant Phil Henschel that

(13)

room 520 no longer exisited.

Lt. Henschel stated room 520 previously exisited as part of the old
Central Booking prior to March of 2014, and it was at the time designated
as a strip search area, with no cameras or recording devices in it.
Thus, Sgt. Walsh was unable to verify Mr. Shaw's complaint regarding the strip search that
then turned into a visaul body cavity search in full view of the video surveillance camera inside of
room 520. and the investigation was hindered thereof.


(F). Defendant Terrence Gordon had not provided written authorization as required by law and
had only allegedly provided oral authorization to conduct a strip search on Mr. Shaw,
and only on a contingency basis that wasnt fulfilled, Mr. Shaw had not been arrested for a drug offense

(G). Pursuant to his official policy, custom and usage of    explicitly designating room
520 at the Central Booking Section for the purposes of subjecting arrestees to various degrees
of nude searches including but not limited to strip searches and visaul body cavity searches
in full view and or in the presence of a video surveillance camera in 2014 Flynns allotted
utilization, was still in effect on the date of February 28th 2014.


(H). At or around the month of March of 2014 room 520 at the Central Booking of the
Police Administration Building was destroyed, suspiciously only days after Mr. Shaw
was subjected to a strip search that turned into a visaul body search in full view of
a video surveillance camera.

oo). As a result of the visaul body cavity search no contraband was found on Mr. Shaw's person, including, his buttox or anus.

oi). After said aforementioned search, defendant officers became feverishly desperate, and sought a search warrant, for an anal cavity search, procuring an affidavit, containing deliberate false statements and critically ommitted facts in reckless disregard for the truth; that was authored by Defendant officer Michael Antoniak and was not reviewed by someone at the District Attorneys office prior to being submitted and issued to and by the court. The search warrant affidavit reads as follows:          AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

1. The Affiant is a Police Officer for the Milwaukee Police Department, having been a Police Officer with 9 1/2 years total law enforcement experience.

2. The Affiant has recieved specialized training in the investigation of crimes involving narcotics and the illegal distribution of narcotics.

3. The Affiant is also currently assigned to the Neighborhood Policing Bureau, Sixth District, with the Milwaukee Police Department.

4. I am currently investigating, pursuant to my official duties, the crimes of Possession of Heroin with intent to Deliver in violation of Wisconsin Statutes 961.41 (1m)(d), Possession of Cocaine with Intent to Deliever in violation of Wisconsin Statutes 961.41 (1m)(cm), Possession of Narcotic Drug Heroin in violation of Wisconsin Statutes 961.41 (3g)(am), and Possession of Cocaine in violation of Wisconsin Statutes 961.41 (3g)(c).

5. This offense occurred at 3006 S. 27th Street, within the City and County of Milwaukee on Thursday, February 27, 2014 at 10:30pm.

6. The Affiant knows that on Thursday, February 27, 2014 at 9:28 pm, police officers of the Milwaukee Police Department conducted a traffic stop on a gray, 4dr, Jeep Cherokee with WI temporary plate J604M for defective registration lamps. I activated the emergency lights of my police vehicle to initiate a traffic stop for such

violation. The vehicle continued southbound for approximately 3/4 of a city block. Upon stopping the vehicle, I identified William L. Shaw (MB 09/20/1985) as the driver of the vehicle. Also identified in the vehicle was front passenger, one Heather Parker (WF 06/22/1992), and the rear passenger, one Shannon L. Hajek (WF 04/12/82). I asked Shaw for the vehicle title and insurance. Shaw opened the glove compartment and officers observed a black digitz scale in plain view inside of the glove compartment. Affiant recognizes the scale as an item consistent with the weighing of narcotics for sales and/or purchases.

7. Affiant knows that during a subsequent search of the vehicle officers recovered a heroin kit, consisting of 20 hypodermic needles, 2 aluminum cookers, a green tourniquet, cotton ball filters, and 17 empty corner cut bags, containing remnants of an unknown powdery substance (suspected heroin). These items were all in a womans purse, located on the rear passenger floorboard.

8. Affiant knows the driver, William L Shaw, is currently on probation for Manufacture/Delivery of Cocaine

9. Affiant knows that on Thursday, February 28, 2014, during a debrief of Shannon L Hajek, (white female, 04/12/82), she stated that Shaw used his right hand to place a baggie of cocaine and heroin into his pants. Hajek stated this occurred while he failed to pull over upon the sight of our emergency lights. Hajek stated she knows that Shaw is a drug dealer in the S. 16th Street and W. Windlake Avenue area. Hajek stated prior to being stopped, Shaw conducted a drug transaction at an unknown location.

10. Affiant knows at 2:25 am, on Friday, 28 February 2014 Deputy Inspector Terrence Gordon of the City of Milwaukee Police Department authorized a strip search of William L Shaw

(16)

Affiant knows at 4:25 am, officers attempted a strip search. Shaw refused to comply with officers' commands to turn out, exposing his buttock region. Shaw clenched his buttocks, solidifying his body.

11. Affiant knows at 4:25am, Shaw freely stated, "I dont care"! As long as you guys (police) dont get it!

12. Affiant knows that since Shaw refused to cooperate with the strip search officers of the Milwaukee Police Department have been observing Shaw to ensure he does not remove any contraband from his anal cavity and attempt to hide it elsewhere.

13. Shaw possessed $400.00 in US Currency (3 one hundred dollar bills, 4 twenty dollar bills, 1 ten dollar bill, 2 five dollar bills) and Shaw indicated that he is not currently working.

14. Affiant knows from training and experience that individuals who sell and/or purchase narcotics, will commonly conceal narcotics in buttocks and anal cavity to avoid detection from police officers.

15. Through training, experience and discussions with other experience law enforcement officers, Affiant is familiar with the ways in which drug traffickers and users conduct their unlawful trade, including their methods of distribution, their utilization of communication devices, their use of coded communications to conduct their transactions, the employment of counter surveillance, their use of false or fictitious identities and their utilization of various forms of property to store and/or conceal their controlled substances, monies and other fruits of illegal activities. Based on Affiant's training and experience, Affiant knows that individuals involved in drug use frequently conceal narcotics in their buttocks and anal cavity to avoid detection by officers.

16. Affiant believes that the search of William L. Shaw will constitute evidence of the crimes of Possession of Controlled substance in violation of Wisconsin Statutes 961.41. End Of Affidavit.

62). Line-5 of the Affidavit : Mr. Shaw had not committed any offense, nor was there an offense committed at 3006 S. 27th Street at the 6th District Milwaukee Police Department rendering this statement false.

63). Line-6 of the Affidavit : Mr. Shaw had not committed any traffic violation nor did the vehicle have defective registration lamps. Furthermore, upon information and belief there isn't any evidence of a black digital scale that was allegedly found inside of the vehicle, ie, pictures, chain of custody reports, or itemized evidentiary property documents, rendering this statement false.

64). Line-7 of the Affidavit : Upon information and belief, defendant Officer Michael Antoniak had failed to include critical determinative information such as the alleged drug – kit and 17 corner cut baggies containing remnants of suspected heroin, that was inside of a womans purse belonged to Shannon L Hajek who had been arrested for said drug kit and possession of, in which she was the sole owner of the purse constituting deliberate disregard for the truth.

65). Line-8 of the Affidavit : Falsely states William L Shaw was on probation for Manufacture/Delievery of Cocaine, Plaintiffs name is (William B Shaw) not William L Shaw as being purported within the search warrant and affidavit.

(A). As a means to strategicly decieve Judge David Borowski while simultaneously in furtherence, depriving Plaintiff Mr. Shaw of his constitutional rights; Defendant officer Michael Antoniak authored the search warrant affidavit that excluded the critical essential facts and circumstances surrounding the arrest and the on-going incident that followed.

(B). Defendant Michael Antoniak had constructed the search warrant affidavit in such a way that it clearly suggested that Mr. Shaw had been responsible for the drug kit and 17 corner cut bags of suspected heroin contained inside of a womans purse that was allegedly found during the search of the vehicle; but had intentionally failed to include significant facts such as: the identity of the owner of the purse, what other contents the purse contained, the arrest and charges of the owner of the purse incurred, and her criminal history, ect.

(C). After being arrested and taken into custody, during the prisoner processing, Shannon L Hajek provided fraudulent information concerning Mr. Shaw actions to Defendant officers who failed to coborrate, verify, investigate, properly asses the information that was given.

(D). In exchange for aforementioned information Shannon L. Hajek was immediately released from police custody and any pending charges concerning the contraband that was contained inside of her purse was not forwarded to the District Attorneys office for prosecution; thus, the Defendant Officers had brokered a deal with Hajek.

(E). After Shannon L Hajek's arrest, Defendant Officer's Michael Antoniak, Kristopher Maduscha, and Unknown Police Sergeant had known or reasonably should have known that the information provided by Hajek was fraudulent and unreliable, and that because she was found to be in possession of contraband she would do or say anything to avoid incarceration and prosecution.

(F). Plaintiff William B Shaw is of Afro decent and Shannon L Hajek is a white Caucasian female date of birth 4/12/82 who were both subsequently arrested on February 27, 2014 and although Mr. Shaw did not have contraband on his person at any point during this incident, before or after, and Hajek was found to be in possession of Felony contraband that was contained within her purse by Defendant Officer's Michael Antoniak, and Kristopher Maduscha upon arrest; Mr. Shaw had been subjected to differential bias treatment and was exclusively targeted by Defendant Officer's involved for self serving purposes and not for the administration of justice.

66). Line-9 of the Affidavit: Officer Michael Antoniak had failed to include critical determinative information such as Shannon L Hajek was newly arrested, and that she was a known confidential police informant constituting a reckless disregard for the truth committed fact.

Furthermore, defendant Antoniak had failed to corroborate any of the false information that was provided to him by Hajek, nor was any of the information reliable or trustworthy, on the basis that at no point during this entire incident contraband was never found on Plaintiff Shaw's person, thus rendering the unfounded, whimsical allegations within the affidavit false.

67). Also within Line-9 of the Affidavit; It alleges that Shannon L Hajek only claimed that Mr. Shaw used his right hand to place drugs into his pants; with no mention of placing anything into his rectal cavity, thus there was no nexus between the allegation and Mr. Shaws rectal cavity, the area sought to be searched.

68). Line-11 of the Affidavit: Mr. Shaw at no point made any such statement, and again no contraband was ever recovered from his person during this entire incident.

69). Line-13 of the Affidavit: Mr. Shaw advised Defendant officers that he was a full-time student at MATC and recieved student financial aid.

70). Lines 14-16 of the Affidavit: Are mere conclusionary speculations and affirmations of suspicions and beliefs, without any statements of adequate supporting facts.

71). Defendant Antoniak had failed to include and ommitted Shannon L Hajeks status within the affidavit regarding the statements she provided and the circumstances of; inwhich she had been arrested for the contraband that was contained inside of her

purse, and that she was an active police informant, who had some type of criminal history.

72). Moreover, Shannon L Hajeks statements lacked the indicia of reliability, substantial questions surrounding her reliability; such as: (How Hajek had known Mr. Shaw) (What was Hajek doing in the vehicle?); (How or if she knew how to identify crack cocaine and herion?) (How did she know an alleged drug deal occurred?) (When Mr. Shaw allegedly placed drugs down his pants did he put them in his front pockets or back?) (Was the alleged baggie of crack cocaine and herion, small like dime bags, meduim size, or a substantantial amount?)
Thus, the two-prong, test of Aguilar v. Texas was not met in this instance, requiring a Franks hearing analys, for insufficiency and lack of probable cause.

73). Both the affidavit and the search warrant contains a name of an unknown person (William L Shaw) 6 times, and at no point of time during this incident did Plaintiff William B Shaw provide Defendant officers with anyother name, and upon arrest Mr. Shaw had provided officers Antoniak and Maduscha with a photo school identification card.

74). After the strip search that turned into a visaul body cavity search Plaintiff William B Shaw was transported from the Police Administration Building to Aurora Sinai Medical Center located at 945 N 12th ST., Milwaukee, WI 53233 by Defendant officers Michael Antoniak and Kristopher Maduscha on 2/28/14

75). Plaintiff Shaw was taken through the emergency entrance straight to and admitted to a patients room.

76). Mr. Shaw was handcuffed to the bed and both Defendant officers Antoniak and Maduscha remained present inside of the room with Mr. Shaw.

77). Physician Assistant Christopher Ellingsen entered Mr. Shaw's room inquiring as to what was going on to Defendant Officers Antoniak and Maduscha.

78). Officer Antoniak informed PA Christopher Ellingsen that Mr. Shaw had hidden drugs in his rectum, and that he (PA Ellingsen) needed to perform a rectal cavity search on Mr. Shaw.

79). PA Christopher Ellingsen then left out the room stating he would return shortly.

80). PA Ellingsen returned and handed Mr. Shaw a 'consent to treat form', and requested Mr. Shaw to sign it.

81). As Mr. Shaw began reading the consent form, PA Christopher Ellingsen explicitly informed officers Antoniak and Maduscha that he (Ellingsen) would not perform a cavity search without Mr. Shaw's consent.

82). Defendant officers became angry, Michael Antoniak then told PA Ellingsen to "step in the hallway".

83). Both PA Christopher Ellingsen and Officer Michael Antoniak went into the hallway, and when they came back into the room, PA Ellingsen insisted and made multiple attempts to persuade Mr. Shaw to sign the

consent to treat form ; Mr. Shaw responded by explaining to PA Ellingsen that he had been stripped searched and humiliated by Defendant officers, and that he was scard for his life and that the officers were going to plant drugs on him, based on their eager insistence to further deprive him of his rights.

Mr. Shaw continued to explain that he has maintained that he did not have any drugs in his rectum, Mr. Shaw began to cry and requested PA Ellingsen for help; PA Ellingsen stated that he was unable to do so because he was only a Physician Assistant and they Antoniak, Maduscha were cops.

84). Defendant officers kept aggressively insisting that PA Christopher Ellingsen perform the body cavity search on Mr. Shaw without his consent, because they had a warrant, PA Ellingsen again stated that he wouldnt do it.

85). After leaving with the search warrant and attached affidavit, PA Ellingsen spoke with Dr. Coogan, risk management, the house supervisor, and then to Randle who after speaking to their lawyer stated that the search warrant is not the correct paperwork necessary to do a rectal search against the patients will "; after reviewing the warrant and attached affidavit.

86). Inturn Christopher Ellingsen provided this same information to Defendant Officer's Michael Antoniak and Kristopher Maduscha, who inturn told PA Ellingsen, despite the information concerning the defectivness of the search warrant, they were going to transport Mr. Shaw to another hospital. Thus, officers Antoniak and Maduscha was explicitly made aware that the search was insufficient, and could not be used to effectuate the rectal search against Mr. Shaw's will prior to making their collective decision to transport Mr. Shaw to another hospital.

(24)

87). Instead of seeking to correct the deficiency of the search warrant and attached affidavit with Judicial Clarification and Redress, officers Antoniak, Maduscha and their supervisors decided to "Hospital Shop" finding a hospital that wouldnt contest the validity of the search warrant, and would do their (MPD's) bidding without regard of Mr. Shaws rights against his will at all cost, and by any means necessary, and that hospital was ; ( Wheaton Franciscan Healthcare – St. Francis located at 3237 S. 16th St. Milwaukee, WI 53215)

88). Mr. Shaw was transported to St. Francis Hospital by Defendant officers Antoniak and Maduscha and was recieved at the Emergency entrance and taken to a patients room.

89). Mr. Shaw was then handcuffed to the bed and both Defendant officers Michael Antoniak and Kristopher Maduscha had remained inside of the room maintaining constant observation of Mr. Shaw

90). Physician Assistant Daniel Teska then entered the room, immediately inquiring as to what was going on to both officers, inwhich Michael Antoniak responded by stating that Mr. Shaw had drugs concealed in his rectum, and that he wanted Teska to perform a rectal cavity search on Mr. Shaw, and that he had a signed search warrant.

91). PA Daniel Teska briefly inspected the search warrant, and then asked Mr. Shaw to sign a consent to treat form, so that he could perform the procedure of the rectal cavity search ; Mr. Shaw responded by informing PA Teska that he didnt have any drugs, and that he had already been stripped searched thoroughly and that the police were trying to plant drugs on him.

92). Defendant PA Daniel Teska then stated to Mr. Shaw that he shouldnt worry about anything if he (Shaw) didnt have nothing on him, and to just sign the consent form so we could just get this over with. Officer Michael Antoniak then

"angerily", shouted "that he was through wasting time", and that Mr. Shaw didn't have any rights" Defendant Michael Antoniak; went on to threaten, "were going to get the drugs one way or another".

93). Defendants PA Daniel Teska and Kristopher Maduscha readily agreed with Antoniak.

94). Officers Michael Antoniak, Kristopher Maduscha and PA Daniel Teska began to place gloves on to their hands, and as Antoniak and Maduscha started walking towards Mr. Shaw, both Defendant officers were menacingly glaring directly at Mr. Shaw, causing Mr. Shaw to become imobile with overwhelming fear and anxiety, one of the officers also began reaching toward their utility belt as if reaching for a weapon further intimidating Mr. Shaw and visually indicating that they (Defendants) would be willing to mortally harm him if need be.

95). At the same time Defendant PA Daniel Teska told Mr. Shaw very sternly to pull down his pants and underwear, Mr. Shaw refused, and began pleading with the Defendants.

96). Defendant PA Daniel Teska then aggressively stated to Mr. Shaw that he (Teska) would pull them down for him then, with a sardonic grin on his face.

97). PA Teska then yanked Mr. Shaws pants and underwear down very quickly and inserted his fingers into Mr. Shaws rectum, without a privacy curtain and while the patients room door was open, exposing him to a public hallway during the intimant humiliating search

98). Plaintiff William R Shaw then yelled out in pain, and stated that he was being violated and that "this wasnt right"; Defendant officers Michael Antoniak and Kristopher Maduscha began laughing boisterously at Mr. Shaws expense further degrading and humiliating him and drawing public spectators to the door while Mr. Shaws intimant areas was expose

99). Defendant PA Daniel Teska had conducted the rectal search without Mr. Shaw's consent, against his will, and adament refusals, while he was hand-cuffed to the bed.

100). No contraband was found on Mr. Shaw's person and or inside of his buttox or his rectal cavity.

101). Out of desperation, PA Daniel Teska offered Defendant Officers: Michael Antoniak and Kristopher Maduscha to conduct a more extensive search by means of x-raying Mr. Shaw; both officer's agreed, PA Teska then ordered a "KUB" x-ray of his own volition, and without justification.

102). Mr. Shaw was x-rayed twice by unknown defendant Radiologist or X-Ray tech, without Mr. Shaw's consent, and despite the fact there was no indication or evidence of Mr. Shaw swallowing/ingesting drugs. In which Mr. Shaw's entire torso, abdomin and pelvic area was doubly exposed for an extended period of time to radiation during said KUB x-ray.

103). Unknown Radiologist or X-Ray tech had failed to provide Mr. Shaw with a protective plated Sheild while the x-ray took place; which is a method that is standard procedure and commonly utilized to protect patients from harmful exposure of radiation during x-rays.

104). As a result no contraband was found on Mr. Shaw's person and or inside of his rectal cavity or abdominal or pelvic area.

105). Defendants Michael Antoniak, Kristopher Maduscha and Daniel Teska were all angry at the negative results of the x-ray which no foreign bodies were found;

106). Subsequently, Mr. Shaw was transported back to the 6th District of Milwaukee Police Station by officers Michael Antoniak, and Kristapher Maduscha, no contraband was ever found on Mr. Shaw's person, before Mr. Shaw was taken back into the District he was made to wait inside of the police vehicle with Officer Maduscha for about 30 minutes while Antoniak went to go "fix and alter" the police reports, per Maduscha.

107). Through-out this entire incident Mr. Shaw had maintained that he didn't have any contraband on his person and or in his buttox and or inside his rectal cavity.

108). Mr. Shaw was never charged or convicted with any drug related crime or otherwise.

109). Mr. Shaw had remained in custody for nearly 120 days for a sanction from his probation officer.

110). Mr. Shaw filed a complaint with the Milwaukee Police Department Internal Affairs Division regarding this incident.

111). On September 30, 2015 Police Sergeant William C. Walsh of the Internal Affairs Division went to Central Booking to inspect room 520. Sgt. Walsh was informed by Police Lieutenant Phil Henschel of the Milwaukee Police Department that room 520 did not exist. Lt. Henschel went on to state room 520 previously existed as part of the old Central Booking prior to March of 2014, and it was at the time designated as a strip search area, with no cameras or recording devices in it. Thus, no documents or verifiable proff was provided by MPD to disprove Mr. Shaw's allegation to the MPD Internal Affairs Division.

112). Upon information and belief, Defendant Lieutenant Phil Henschel had known or reasonably should have known arrestees were being subjected to various degrees of strip searches in full view and or in the presence of a video surveillance camera, and when questioned about it by Internal Affairs Police Sergeant William C. Walsh Lt. Henschel knowingly provided false information to Sgt. Walsh, claiming that room 520 at Central Booking Section didn't have a video surveillance camera equipped during the searches of Plaintiff Mr. Shaw that occurred on 2/28/14 or anytime prior to the destruction of the room in order to decieve and conceal wrong doing wrong doing by the MPD. Thus Lt. Henschel deliberately hindered the Internal Affairs Investigation.

113). Mr. Shaw eventually recieved a letter from Internal Affairs stating that no misconduct had been found with Defendant officers actions.

114). Mr. Shaw also filed a complaint with the (Wisconsin Department of Safety and Professional Services) regarding the misconduct of PA Daniel Teska, and others medical staff, notifying them of the entire incident.

115). As a result Defendant PA Daniel Teska was contacted by the Wisconsin Department of Safety and Professional Services as well as other parties of the complaint, and made to respond to the above complaint; in which PA Teska deliberately provided a falsified statement that inaccurately reflected what occurred at Saint Francis Hospital concerning his direct involvement and actions in this incident.

Thus Teska had provided false information to the investigator in-order to conceal wrong-doing and impeded the investigation.

116). Mr. Shaw eventually recieved a letter from the Wisconsin Department of Safety and Professional Services that no misconduct had been found with the Defendants.

117). As a result of the illegal searches perpetrated and allowed by these Defendant Officers, Physician Assistant, Radiologist or X-Ray Technician, Mr. Shaw experienced physical pain, emotional distress, humiliation, and trauma.

## Count I - 42 U.S.C. 1983
### Due Process

(Against: Thomas J Slowinski, Michael Antoniak, Kristopher Maduscha, Timothy A Hauf, Terrence Gordon, and other Unknown Milwaukee Police Department Employees and Officers)

118). Each Paragraph of this Complaint is incorporated as if fully stated herein.

119). As described more fully above Defendants denied Plaintiff due process and equal protection laws in that they engaged in arbitrary government actions and ommissions that deprived him of his liberty violated his right to bodily integrity, and was so malfeasant as to shock the conscience.

119). The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others, and was objectively unreasonalble.

120). The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that —

their employer, City of Milwaukee, is liable for their actions.

121). As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to emotional distress and anguish.

## Count II - 42 U.S.C. "1983
### Fourth Amendment
(Against: Michael Antoniak, Kristopher Maducha, Thomas J Slowinski, Timothy A Hauf and other Unknown MPD Employees and Officers)

122). Each Paragraph of this Complaint is incorporated as if restated fully herein.

123). As described in the preceding paragraphs, the Defendant officers violated Plaintiffs Fourth Amendment right to be free from unreasonable search and seizure.

124). As described in the preceding paragraphs, the Defendant officers violated Plaintiffs Fourth Amendment right in that they seized Plaintiff without justification and without probable cause and conducted an illegal search of his vehicle, and an illegal search of his body by conducting an unauthorized, unconsented, very intrusive and humiliating strip search that turned into a visaul body cavity search ordering the Plaintiff to lift his scrotums and penis, and then ordering him to bend over and spread his buttox until his anus was fully exposed while being in full view of a video surveillance camera while being visaully observed and recorded through the same.

125). The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs constitutional rights.

126). The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

127). The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee is liable for their actions.

128). As a result of unjustified and unreasonable conduct of unjustified and unreasonable conduct of the Defendant Officers, Plaintiff has suffered injuries, including emotional destress.

## Count III - 42 U.S.C. § 1983
## Fourth Amendment
(Against: Daniel Teska, Unknown Radiologist or X-Ray tech, Michael Antoniak, Kristopher Maduscha)

129). Each Paragraph of this complaint is incorporated as if restated fully herein.

130). As described in the preceding paragraphs, the Defendant Officers, Physician Assistant, and Radiologist or X-Ray tec violated Plaintiffs Fourth Amendment right to be free from unreasonable searches and seizure.

131). As described in the preceding paragraphs, the Defendant Officers, Physician Assistant, and Radiologist or X-Ray Tech violated Plaintiffs Fourth Amendment right without justification and without probable cause and conducted an illegal search

of his body by forcing fingers inside of his rectum while having the door to the patients room fully open and exposing him to public spectators view all while the humiliating search and then x-raying his abdominal and pelvic area.

132). The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiff's constitutional rights.

133). The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

134). The misconduct described in this Count was undertaken by Defendents within their employment and under color of law such that their employer, City of Milwaukee, Wheaton Franciscan Healthcare - St. Francis is liable for their actions.

135). As a result of unjustified and unreasonable conduct of Defendant Officers, Physician Assistant, Radiologist X-Ray Tech, Plaintiff has suffered injuries, including emotional distress.

## Count IV - 42 U.S.C. $^{\S\S}$ 1983
## False Arrest

( Against: Michael Antoniak and Kristopher Maduscha )

136). Each Paragraph of this Complaint is incorporated as if fully stated herein.

37). As described above, Defendant Officers falsely arrested and unlawfully detained Plaintiff without justification and without probable cause.

138). The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

139). As a result of unjustified and unreasonable conduct of the Defendant Officers, Plaintiff has suffered injuries, including emotional distress.

## Count V - 42 U.S.C. "1983
## Failure to Interven

(Against: Michael Antoniak, Kristopher Maduscha, and other Unknown MPD Employees and Officers, Timothy A Hauf)

140). Each Paragraph of this Complaint is incorporated as if fully stated herein.

141). As described more fully above, one or more of the Defendants had a reasonable opportunity to prevent the violation of Plaintiffs constitutional rights as set forth above had he or she been inclined, but failed to do so.

142). The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to the rights of others.

143). The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

144). As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to emotional distress and anguish.

## Count VI – 42 U.S.C. "1983
### Conspiracy
(Against: Michael Antoniak, Kristopher Maduscha, Thomas J Slowinski, Timothy A Hauf and other Unknown MPD Employees and Officers, and Terrence Gordon)

145). Each Paragraph of this Complaint is incorporated as if fully stated herein.

146). As described more fully above, Defendant Officers reached an agreement among themselves to deprive Plaintiff of his constitutional rights.

147). In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

148). The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

149). The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

150). As a direct and proximate result of the illicit prior agreement referenced above, concerning the strip search and visual body cavity search of Mr. Shaw, Plaintiff rights were violated and he suffered injuries, including but not limited to emotional distress, as described above.

## Count VII - 42 U.S.C. "1983
## Supervisory Liability

151). Each Paragraph of this Complaint is incorporated as if fully stated herein.

152). As described more fully above, Defendants: Edward Flynn, and Terrence Gordon, knew or reasonably should have known that Defendants Timothy A Hauf Michael Antoniak, Kristopher Maduscha, Thomas J Slowinski would violate citizens rights in one or more of the ways described above, and or knew or reasonably known about officers engaging in improper searches, and facilitated, approved, condoned, turned a blind eye to, and or purposefully ignored the continued exploitations of arrestees being subjected to various degrees of nude searches, including but not limited to strip searches, and visaul body cavity searches in full view and or in the presence of a video surveillance camera, while being visaully observed and recorded through the same, inside of room 520 at the "Central Booking Section" of the Police Administration Building that was specifically designated for said searches.

153). As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to emotional distress and anguish.

Count VIII - 42 U.S.C. § 1983

Municipal liability

and pursuant to Monell v. Dep't of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)

154). Each Paragraph of this Complaint is incorporated as if fully stated herein.

155). As described more fully above, the policy, customs, and usages were those of Milwaukee County acting through it's highest-ranking final authoritve decisionmaker and policymaker Chief Edward Flynn with respect to the Milwaukee Police Department caused the Plaintiff Mr. Shaw's deprivation of constitutional rights.

156). The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

157). As a result of unjustified and the unreasonable policy, custom, and usage, though inwritten of subjecting arrestees to various degrees of nude searches, including but not limited to strip searches, and visaul body cavity searches in full view and or in the presence of a video surveillance camera, while being visaully observed and recorded through the same, inside of room 520 at the "Central Booking Section" of the Police Admistration Building that was specifically designated for said searches and was a wide-spread practice that was commonly utilized through-out the Milwaukee Police Department by it's employees and officers ; was the "moving force" behind the injuries incurred and suffered by Mr. Shaw including emotional distress.

## Count IX - 42 U.S.C. § 1983
### Conspiracy

(Against: Michael Antoniak, Kristopher Maduscha, Daniel Teska, and other Unknown Milwaukee Police Department Employees and Officers.)

158). Each Paragraph of this Complaint is incorporated as if fully stated herein.

159). As described more fully above, Defendant Officers reached an agreement among themselves to deprive Plaintiff of his constitutional rights.

160). In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

161). This misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to the rights of others.

162). The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

163). As a direct and proximate result of the illicit prior agreement referenced above, concerning the rectal cavity search of Mr. Shaw, Plaintiff's rights were violated and he suffered injuries, including but not limited to emotional distress, as described above.

## Count X - 42 U.S.C. "1983
## Indemnification

164). Each Paragraph of this Complaint is incorporated as if fully stated herein.

165). Wisconsin law, Wisc. Stat. "895.46, requires public entities to pay any tort Judgment for damages for which employees are liable within the scope of their employment activities.

166). The Defendant Officers are or were employees of the Milwaukee Police Department, who acted within the scope of their employment in committing the misconduct described herein.

C.   JURISDICTION

☒   I am suing for a violation of federal law under 28 U.S.C. § 1331.
     Venue is proper under **28 U.S.C. §§ 1391 (b)**
                          OR

☐   I am suing under state law. The state citizenship of the plaintiff(s) is (are)
     different from the state citizenship of every defendant, and the amount of
     money at stake in this case (not counting interest and costs) is
     $_____.

D.   RELIEF WANTED

Describe what you want the Court to do if you win your lawsuit. Examples may
include an award of money or an order telling defendants to do something or to
stop doing something.

Wherefore, Plaintiff, William R Shaw, respectfully requests that this Court
enter Judgement in his favor and against Defendants, City of Milwaukee,
Edward Flynn, Terrence Gordon, Michael Antoniak, Kristopher Maduscha,
Timothy A Hauf, Thomas J Slowinski, unknown Milwaukee Police Department
employees and officers, Wheaton Francisican Healthcare - St. Francis,
Daniel Teska, unknown Radiologist or X-Ray Technician, and unknown
Employer of Daniel Teska, awarding compensatory damages and
attorneys' fees, as well as punitive damages against the
Defendants in their individual capacities, as well as any other relief
this Court deems Just and appropriate.

E.    JURY DEMAND

I want a jury to hear my case.

☒ – YES            ☐ – NO

I declare under penalty of perjury that the foregoing is true and correct.

Complaint signed this __10th__ day of __July__ 20_19_.

Respectfully Submitted,

_____
Signature of Plaintiff

__2017031179__
Plaintiff's Prisoner ID Number

__949 N 9th St.__

__Milwaukee, WI 53233__
(Mailing Address of Plaintiff)

(If more than one plaintiff, use another piece of paper.)

**REQUEST TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING THE FULL FILING FEE**

☒    I **DO** request that I be allowed to file this complaint without paying the filing fee. I have completed a Request to Proceed in District Court without Prepaying the Full Filing Fee form and have attached it to the complaint.

☐    I **DO NOT** request that I be allowed to file this complaint without prepaying the filing fee under 28 U.S.C. § 1915, and I have included the full filing fee with this complaint.