# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

WILLIAM R. SHAW,

                Plaintiff,

v.                                                    Case No. 19-C-1059

CITY OF MILWAUKEE, CHIEF EDWARD FLYNN,
TERRENCE GORDON, TIMOTHY A. HAUF,
MICHAEL ANTONIAK, VINCENT ANDRYSCZYK,
and THOMAS J. SLOWINSKI,

                Defendants.

---

## ANSWER AND AFFIRMATIVE DEFENSES

---

## ANSWER

NOW COMES Defendant Vincent Andrysczyk, by his attorney, Tearman Spencer, City Attorney, Assistant City Attorney Naomi E. Gehling, and as and for an answer to Plaintiff's complaint[1], admits, denies, alleges and states to the Court as follows:

## PARTIES

1.     The plaintiff is a citizen of Wisconsin, and is located at 949 North 9th Street, Milwaukee, WI 53233, Milwaukee County Jail.

**Answering Paragraph 1: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

2.     The defendant, Wheaton Franciscan Health Care-St. Francis, physician assistant

---

[1] This Court's September 23, 2020 Order granting Plaintiff's August 19, 2020 Motion to Add Defendant did not include an amended complaint and Plaintiff's motion indicates only that was moving to substitute "Andrysczyk with Maduscha as the Defendant, only with respect to the unreasonable searches committed at the hospital." Plaintiff's Motion to Amend and Add Substitute Party, ECF Doc. No. 61, pg. 3. Because Defendant Andrysczyk is unsure which allegations Plaintiff desired to change, with the exception of Paragraph 10 that names the defendants, the Complaint has been left as filed and answers have been provided to the original allegations.

Daniel Teska, unknown employer of physician assistant Daniel Teska, unknown radiologist or x-ray technician, unknown Milwaukee Police Department employees and officers (defendants) and (defendant officers) are being sued individually and in their official capacities.

**Answering Paragraph 2: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

## INTRODUCTION

On information and belief, all or most of the parties reside or resided in Milwaukee County when this incident occurred, and the events giving rise to the claims asserted herein all occurred within the district.

**Answering Unnumbered Paragraph: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

3.       This action is brought pursuant to 42 U.S.C. § 1983 and the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution and also the unreasonable search and seizure clause of the Fourth Amendment to the United States Constitution to redress the deprivation under color of law of Plaintiff William R. Shaws [sic] rights as secured by the United States Constitution.

**Answering Paragraph 3: The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

4.       Plaintiff William R. Shaw is a resident of Milwaukee and when this incident occurred he was a full time student at Milwaukee Area Technical College pursuing his Associates Degree in Business Management.

**Answering Paragraph 4: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

5.       The City of Milwaukee is a Wisconsin municipal corporation with its principal place of business in Milwaukee, Wisconsin.

**Answering Paragraph 5: Admits the allegations contained therein.**

6.     Defendant Edward Flynn was at the time of the series of searches, Chief of the Milwaukee Police Department, acting under color of law within the meaning of 42 U.S.C. § 1983 and within the scope of his employment within the meaning of §895.46, Wis. Stats. Defendant Flynn is being sued <u>both individual and his official capacity</u>.

**Answering Paragraph 6:  Admits that Defendant Flynn was the Chief of the Milwaukee Police Department in February 2014; the remaining allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

7.     Defendant Terrence Gordon was at the time of the series of searches and or still is, Deputy Inspector of the Milwaukee Police Department, at all times relevant to this action was acting under color of law within the meaning of law within the mean of 42 U.S.C. § 1983 and within the scope of his employment within the meaning of § 895.46, Wis. Stats.  Defendant Gordon is being sued – both individually and in his official capacity.

**Answering Paragraph 7:  Admits that Defendant Gordon was a Deputy Inspector with the Milwaukee Police Department in February 2014; the remaining allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

8.     Defendant Phil Henschel was and or still is a Lieutenant of the Milwaukee Police Department at all times relevant to this action was acting under color of law within the meaning of 42 U.S.C. § 1983 and within the scope of his employment within the meaning of § 895.46, Wis. Stats.  <u>Defendant Henschel is being sued both individually and in his official capacity</u>.

**Answering Paragraph 8:  Admits that Defendant Henschel was a Police Lieutenant with the Milwaukee Police Department in February 2014; the remaining allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, lacks knowledge or information**

sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.

9.      Defendant Timothy A. Hauf, at the time of the series of searches was and or still is a Sergeant of the Milwaukee Police Department and at all times relevant to this action, was acting under color of law within the meaning of 42 U.S.C. § 1983 and within the scope of his employment within the meaning of § 895.45 Wis. Stats.  Defendant Hauf is being sued both individual and in his official capacity.

**Answering Paragraph 9:  Admits that Defendant Hauf was a Police Sergeant with the Milwaukee Police Department in February 2014; the remaining allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

10.      Defendant Officer's [sic] Michael Antoniak, Vincent Andrysczyk, and Thomas J. Slowinski at all times relevant to this action, was acting under color of law within the meaning of 42 U.S.C. 1983 and within the scope of their employment within the meaning of 895.46 Wis. Stats. Defendant's [sic] Antoniak, Andrysczyk, and Slowowinski are being sued both in their individual and official capacities.

**Answering Paragraph 10:  Admits that Defendants Antoniak, Andrysczyk, and Slowinski were Police Officers with the Milwaukee Police Department in February 2014; the remaining allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

11.      Defendant Wheaton Franciscan Healthcare – St. Francis is a body corporate organized under and pursuant to the laws of Wisconsin and its address is Wheaton Franciscan Healthcare – St. Francis 3237 S. 16th Street Milwaukee, WI 53215 and its Corporate Office address is Wheaton Franciscan Healthcare 400 W. River Woods Parkway Glendale, WI 53212. At all times relevant to this action, was acting under color of law within the meaning of 42 U.S.C. 1983 and within the scope of their employment within the meaning of 895.46 Wis. Stats.

**Answering Paragraph 11: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

12. Defendant Daniel Teska at all times relevant to this action, was acting under color of law within the meaning of 42 U.S.C. 1983 and within the scope of his employment within the meaning of § 895.46, Wis. Stats. Defendant Teska is being sued both in his individual and official capacity.

**Answering Paragraph 12: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

13. Unknown Defendant Employer of Physician Assistant Daniel Teska who at all times relevant to this action, was acting under color of law within the meaning of 42 U.S.C. 1983.

**Answering Paragraph 13: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

14. Unknown Defendant officers are current and/or former employees, officers, and or supervisors of the Milwaukee Police Department who at all times relevant to this action was acting under color of law within the meaning of 42 U.S.C. 1983 and within the scope of their employment within the meaning of § 895.46 Wis. Stats. Defendants are being sued both in their individual and official capacities.

**Answering Paragraph 14: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

15. Unknown Defendant Radiologist or X-Ray technician who at all times relevant to this action was acting under color of law within the meaning of 42 U.S.C. 1983 and within the scope of his employment within the meaning of § 895.46 Wis. Stats. And is being sued both individually and in his official capacity.

**Answering Paragraph 15: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

## STATEMENT OF CLAIM

16. On February 27, 2014 at approximately 9:28 PM William R Shaw [sic] was in his fathers [sic] vehicle with then, girlfriend Heather Parker who was the front seat passenger, and her friend Shannon L. Hajek who sat in the back seat, directly behind the front seat passenger (Parker), when he was stopped by officers Antoniak and Maduscha for an alleged traffic

violation on the 3100 block of South 9th Place Milwaukee, WI.

**Answering Paragraph 16:  Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

17.    Mr. Shaw had not committed any traffic violation.  Rather, officers Antoniak and Maduscha used an alleged traffic stop to search Mr. Shaw's person, the two passengers, and the vehicle without probable cause.

**Answering Paragraph 17:  Denies the allegations contained therein.**

18.    Officers Antoniak and Maduscha approached the vehicle; requested the names of the occupants, and then ordered Mr. Shaw out of the vehicle.

**Answering Paragraph 18:  Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

19.    Mr. Shaw repeatedly asked officers Antoniak and Maduscha why they had stopped him, but they refused to answer Mr. Shaw's questions.

**Answering Paragraph 19:  Denies the allegations contained therein.**

20.    Mr. Shaw was made to exit the vehicle [sic] officers Antoniak and Maduscha put him up against the vehicle very aggressively.

**Answering Paragraph 20:  Denies the allegations contained therein.**

21.    Officer Antoniak then searched Mr. Shaw by pat searching him, going into his pockets, checking his waste [sic] band, and the base of his pant legs.

**Answering Paragraph 21:  Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

22.    No contraband was found on Mr. Shaw.

**Answering Paragraph 22:   Admits that no drugs or paraphernalia were found on Plaintiff's person.**

23.    Defendant officers then arrested Mr. Shaw and placed him in back of their police car, falsely claiming Mr. Shaw's probation officer had previously placed a detainer on him, with no other explanation.

**Answering Paragraph 23:  Denies the allegations contained therein.**

24.     However, the Defendant officers hadn't contacted the Department of Corrections until after Mr. Shaw was arrested, detained and the search of the vehicle occurred.

**Answering Paragraph 24:  Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

25.     Officers Antoniak and Maduscha then walked back to the vehicle, and ordered the remaining two occupants to exit, and began an unconsented search of said vehicle.

**Answering Paragraph 25:  Denies the allegations contained therein.**

26.     As a result, Ms. Parker was released on scene, and Hajek was arrested and taken into custody for having concealed in her purse, a drug kit, with 17 corner cut bags containing reminants [sic] of an unknown powdery substance believed to be heroin by Defendant officers.

**Answering Paragraph 26:  Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

27.     All unbeknownst to Mr. Shaw, who had just met Ms. Hajek for the first time, after just picking her up, merely 30 minutes prior to being stopped by Defendant officers Michael Antoniak and Kristopher Maduscha.

**Answering Paragraph 27:  Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

28.     Ms. Hajek and Mr. Shaw were both transported to District 6 of the Milwaukee Police Department in separate police vehicles, located at 3006 S. 27th St., Milwaukee, WI.

**Answering Paragraph 28:  Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

29.     After being processed and booked into the station, Mr. Shaw was again searched, with no contraband being found on him, and placed into a holding cell.

**Answering Paragraph 29:  Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

30.     Shortly thereafter, Mr. Shaw was startled awake by officers, who immediately handcuffed him and led him to a wet cell with no door and placed him inside, with an officer at

the entrance of the door to maintain observation of him.

**Answering Paragraph 30: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

31.    Mr. Shaw was then approached by a Sergeant of the Milwaukee Police Department who's [sic] name is unknown, who informed Mr. Shaw that the female backseat passenger Shannon L. Hajek, who was arrested; specifically stated: "that he Mr. Shaw had drugs concealed inside of his rectum", to himself and other officers.

**Answering Paragraph 31: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

32.    However, according to the police reports Shannon L Hajek falsely reported to officers that "Mr. Shaw only had placed drugs down his pants with his right hand", with no mention of putting anything into his rectum or buttox. [sic]

**Answering Paragraph 32: Admits that Milwaukee Police Department documents state that Ms. Hajek stated that Plaintiff used his right hand to place drugs into his pants; lacks knowledge or information sufficient to form a belief as to the remaining allegations contained therein, and therefore, denies the same.**

33.    After Mr. Shaw vehemently denied having any drugs or contraband on his person, concealed or otherwise several times, the unknown police Sergeant became very angry and hostile with Mr. Shaw; posing an intimidating question to Mr. Shaw stating: "do you want to do this the easy way or hard way."

**Answering Paragraph 33: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

34.    Not receiving the desired response he had anticipated, the unknown police sergeant erectly stood up on his feet and pointed his finger at Mr. Shaw's face and stated that "he (Shaw) would be sorry for this."

**Answering Paragraph 34: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

35.    Mr. Shaw was then transported by officers Michael Antoniak and Kristopher Maduscha to the Milwaukee Police Administration Building located Down Town [sic]

Milwaukee also known as the First District located at 749 West State Street, Milwaukee, WI 53233.

**Answering Paragraph 35: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

36.     Again Mr. Shaw was searched, once inside of the Police Administration Building by officer [sic] Thomas J Slowinski.

**Answering Paragraph 36: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

37.     No contraband was found on Mr. Shaws [sic] person.

**Answering Paragraph 37: Admits the allegations contained therein.**

38.     45 minutes to an hour later Mr. Shaw was taken down the hallway to room 520 located at the Central Booking Section by officer Kristopher Maduscha who had maintained constant observation of Mr. Shaw during this incident.

**Answering Paragraph 38: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

39.     Mr. Shaw was then deposited into room 520 at or around 4:25 AM on the date of 2/28/14 with officer Thomas J Slowinski and Sergeant Timothy A Hauf, who was already present inside the room.

**Answering Paragraph 39: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

40.     Defendant officer Kristopher Maduscha left out of the room after uncuffing Mr. Shaw.

**Answering Paragraph 40: Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

41.     Plaintiff Mr. Shaw was then immediately ordered to remove all of his clothing, to be completely disrobed, so that he was nude, and to give each article of clothing to and by Defendant officer Thomas J Slowinski; without further explanation.

**Answering Paragraph 41**: **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

42. Mr. Shaw was made to give each article of clothing to Defendant officer Thomas J Slowinski, as officer Slowinski received Mr. Shaw's clothing, he began identifying each article of clothing with a hand-held audio recording device, while Defendant Sgt. Timothy A. Hauf observed in silence and did not intervene.

**Answering Paragraph 42**: **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

43. With accordance to Wisconsin State Statutes strip searches can not [sic] be conducted if it is reproduced by audio or video recording.

**Answering Paragraph 43**: **The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore, denies the same.**

44. Officer Thomas J Slowinski then aggressively ordered Mr. Shaw to lift his scrotums and penis, as Mr. Shaw was doing so, Defendant officer Slowinski continued to speak into the hand-held audio recording device.

**Answering Paragraph 44**: **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

45. After this, Officer Thomas J Slowinski ordered Mr. Shaw to turn around and bend over.

**Answering Paragraph 45**: **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

46. Mr. Shaw complied with said orders out of fear and itimidation. [sic].

**Answering Paragraph 46**: **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

47.     After doing so Defendant officer Slowinski ordered Mr. Shaw to "spread his buttox [sic] apart."

**Answering Paragraph 47**:  **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

48.     As Mr. Shaw was complying with the order to spread his buttox, [sic] officer Thomas J Slowinskikep repeatedly yelling at Mr. Shaw, ordering him to spread his buttox [sic] further and further until Mr. Shaw's anus was fully exposed.

**Answering Paragraph 48**:  **Denies the allegations contained therein.**

49.     All while both Defendant officer's [sic] Thomas J Slowinski and Sergeant Timothy a Hauf tilted their heads to the side, with bended knees, scrutinizing each intimate private area of Mr. Shaw, including his fully exposed anus.

**Answering Paragraph 49:  Denies the allegations contained therein.**

50.     Mr. Shaw related to Defendant Officer's Slowski and Sergeant Hauf that his anus and buttox [sic] were in pain from spreading so far apart, at which point officer slowinski stated that:  it wasn't good enough", after repeatedly yelling at Mr. Shaw to spread his buttox [sic] further and further.

**Answering Paragraph 50:  Denies the allegations contained therein.**

51.     The Plaintiff Mr. William R Shaw was then ordered to put his clothing back on; while dressing, Mr. Shaw noticed that infact [sic] there was a surveillance camera inside of room 520 and that Defendant officers had deliberately ensured he was positioned in full view of the surveillance camera while the strip search that turned into a visual body cavity search was conducted on him.

**Answering Paragraph 51: Denies the allegations contained therein.**

52.     Upon information and belief, Mr. Shaw was being visaully [sic] recorded and observed through the surveillance camera that was located inside of room 520 at the Central Booking Section during above said searches by Defendant officers Michael Antoniak, Kristopher Maduscha and others, without Mr. Shaws [sic] knowledge or consent additionally niether [sic] Antoniak nor Maduscha or any other employees of the Milwaukee Police Department had intervened or attempted to interven [sic] during the unreasonable series of searches Mr. Shaw was subject to.

**Answering Paragraph 52**:  **Denies the allegations contained therein.**

53.     Before or after said searches occurred, Mr. Shaw was not provided with a copy of the written authorization that was required to be obtained by Deputy Inspector Terrence Gordon

to conduct a strip search as required by Wis. SS 968.255(d)(e)(d), nor did Mr. Shaw provide consent for a strip and or a visual body cavity search to be conducted on him.

**Answering Paragraph 53**:  **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

54.     Officers Thomas J Slowinski, Michael Antoniak, Kristopher Maduscha and Sgt. Timothy A Hauf had known or reasonably should have known that even if Defendant Deputy Inspector Terrence Gordon had provided authorization to conduct a strip search on Mr. Shaw that "written authorization" was reqired [sic] in order to have been in compliance with the law and the standard of operation procedures of the MPD and in order to even conduct the search.

**Answering Paragraph 54**:  **The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore, denies the same.**

55.     Defendant Deputy Inspector Terrence Gordon had known and or reasonably should have known even if he had provided oral authorization to Defendant officers to conduct a strip search on Mr. Shaw; 'that by officers acting upon his oral authorization' without properly obtaining a "written authorization" as legally required would deprive Mr. Shaw of his constitutional rights.

**Answering Paragraph 55**:  **The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore, denies the same.**

56.     Upon information and belief, pursuant to official policy, custom and usage Plaintiff William R. Shaw was subjected to a very intrusive unauthorized dehuminizing [sic] visaul [sic] body cavity search inside of room 520 at the Central Booking Section, and while he was in full view of a surveillance camera, which was an explicitly-commonly utilized and specificly [sic] designated as a strip search area and was a wide-spread practice utilized throughout the Milwaukee Police Department.

**Answering Paragraph 56**:  **Denies the allegations contained therein.**

57.     Upon information and belief, pursuant to official policy, custom and usage, Deputy Inspector Terrence Gordon had known or should have known about officers engaging in

improper searches, and facilitated, approved, condoned turn a blind eye to, and or purposefully ignored the continued exploitation of arrestees being subjected to various degrees of nude searches including but not limited to strip searches and visaul [sic] body cavity searches in full view and or in the presence of a video surveillance camera, while being visually [sic] observed and recorded through the same inside of room 520 at the "Central Booking Section", well known throughout the MPD to have been specifically designated for above said searches.

**Answering Paragraph 57**: **Denies the allegations contained therein.**

58. Upon information and belief, pursuant to his official policy, custom and usage, Defendant Chief Edward Flynn had known or should have known about the officers engaging in improper searches, and facilitated, approved, condoned, turned a blind eye to, and or purposefully ignored the continued exploitation of arrestees being subjected to various  degrees of nude searches including but not limited to strip searches and visaul [sic] body cavity searches in full-view and or in the presence of a video surveillance camera, while being visaully [sic] observed and recorded through the same inside of room 520 at the "Central Booking Section" well known through-out the MPD to have been specifically designated for above said searches, in which Mr. Shaw was transported from the 6th District Police Station to the Police Administration Building in accordance with Flynns [sic] policy, custom and usage of the same of conducting said searches inside room 520.

**Answering Paragraph 58**: **Denies the allegations contained therein.**

59. Moreover, even if appropriate authorization was aquired [sic] to conduct a strip search on Mr. Shaw; it was objectively unreasonable for Defendant officers Slowinski, Antoniak, Maduscha, and Hauf to have concluded that authorization to conduct a strip search included anything beyond the removal of Mr. Shaw's cloths in order to inspect his naked body, but without scrutinizing his body cavities ie, a (visaul [sic] body cavity search), especially in full view of a video surveillance camera in a room 520 at the Central Booking Section, where there was known to be video equipment present.

A. before the visaul [sic] body cavity search was conducted Mr. Shaw was not provided with a copy of a report that should have been prepared by the person conducting the search containing the "written authorization" that should have been obtained from Defendant Terrence Gordon as required by law.

B. The visaul [sic] body cavity search that was conducted on Mr. Shaw was in fact conducted in room 520 at the "Central Booking Section" where there was known to be the presence of video equipment contrary to the law; that explicitly prohibits strip searches in the "Booking Room" due to the presence of video equipment.

C. Defendant Deputy Inspector Terrence Gordon had known or reasonably should have known that the search was going to be conducted in room 520 at the Central Booking Section where the presence of video equipment was known to be; because officer Michael Antoniak had contacted Terrence Gordon to obtain authorization, and was required to inform him of the location here the search was to take place and who was going to be conducting it.

D. the agreement between Defendants Antoniak and Gordon was that Mr. Shaw be arrested for a drug offense; then he (Gordon) would provide "authorization" for the search.

E. On September 30, 2015 police Sergeant William C. Walsch of the Milwaukeee Police Department Internal Affairs Division while investigating Mr. Shaws complaint against Defendant officers, went to Central Booking to inspect room 520 at the Police Administrative Building located down town Milwaukee, WI. And was informed by Lieutenant Phil Henschel that room 520 no longer existed.

Lt. Henschel stated room 520 previously existed as part of the old Central Booking prior to March of 2014, and it was at the time designated as a strip search area, with no cameras or recording devices in it. Thus, Sgt. Walsh was unable to verify Mr. Shaws complaint regarding the strip search that then turned into a visaul [sic] body cavity search in full view of the video surveillance camera inside of room 520 and the investigation was hindered thereof.

F. Defendant Terrence Gordon had not provided written authorization as required by law and had only allegedly provided oral authorization to conduct a strip search on Mr. Shaw, and only on a contingency basis that wasn't fulfilled, Mr. Shaw had not been arrested for a drug offense.

G. Pursuant to his official policy, custom and usage of explicitly designating room 520 at the Central Booking Section for the purposes of subjecting arrestees to various degrees of nude searches including but not limited to strip searches and visaul [sic] body cavity searches in full view and or in the presence of a video surveillance camera in 2014 Flynns [sic] allotted utilization, was still in effect on the date of February 28th 2014.

H. At or around the month of March of 2014 room 520 at the Central Booking of the Police Administration Building was destroyed, suspiciously only days after Mr. Shaw was subjected to a strip search that turned into a visaul [sic] body search in full view of a video surveillance camera.

**Answering Paragraph 59**:   **Denies any wrongdoing on the part of the Answering Defendant; the allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore, denies the same.**

60.    As a result of the visaul [sic] body cavity search no contraband was found on Mr. Shaw's person, including, his buttox [sic] or anus.

**Answering Paragraph 60**:  **Denies the allegations contained therein.**

61.     After said aforementioned search, defendant officers became feverishly desperate, and sought a search warrant, for an anal cavity search, procuring an affidavit, containing deliberate false statements and critically omitted facts in reckless disregard for the truth; that was authored by Defendant officer Michael Antoniak and was not reviewed by someone at the District Attorneys office prior to being submitted and issued to and by the court.  The search warrant affidavit reads as follows:

## AFFIDAVIT IN SUPPORRT OF SEARCH WARRANT

1.     The Affiant is a Police Officer for the Milwaukee Police Department, having been a Police Officer with 9 ½ years total law enforcement experience.
2.     The Affiant has received specialized training in the investigation of crimes involving narcotics and the illegal distribution of narcotics.
3.     The Affiant is also currently assigned to the Neighborhood Policing Bureau, Sixth District, with the Milwaukee Police Department.
4.     I am currently investigating, pursuant to my official duties, the crimes of Possession of Heroin with intent to Deliver in violation of Wisconsin statutes 961.41(1m)(d), Possession of Cocaine with Intent to Deliver in violatin of Wisconsin Statutes 961.41 (1m)(cm), Possession of Narcotic Drug Heroin in violation of Wisconsin Statutes 961.41(3g)(am), and Possession of Cocaine in violation of Wisconsin Statutes 961.41(3g)(c).
5.     This offense occurred at 3006 S. 27th Street, within the City and County of Milwaukee on Thursday, February 27, 2014 at 10:30 pm.
6.     The Affiant knows that on Thursday, February 27, 2014 at 9:28 pm, police officers of the Milwaukee Police Department conducted a traffic stop on a gray, 4dr, Jeep Cherokee with WI temporary plate J604M for defective registration lamps.  I activated the emergency lights of my police vehicle to initiate a traffic stop for such violation.  The vehicle continued southbound for approximately ¾ of a city block.  Upon stopping the vehicle, I identified William L.[sic] Shaw (MB 09/20/1985) as the driver of the vehicle.  Also identified in the vehicle was front passenger, one Heather Parker (WF 06/22/1992), and the rear passenger, one Shannon L. Hajek (WF 04/12/82).  I asked Shaw for the vehicle title and insurance.  Shaw opened the glove compartment and officers observed a black digitz [sic] scale in plain view inside of the glove compartment.  Affiant recognizes the scale as an item consistent with the weighing of narcotics for sale and/or purchases.
7.     Affiant knows that during a subsequent search of the vehicle officer recovered a heroin kit, consisting of 20 hypodermic needles, 2 aluminum cookers, a green tourniquet, cotton ball filters, and 17 empty corner cut bags containing remnants of an unknown powdery substance (suspected heroin).  These items were all in a womans [sic] purse, located on the rear passenger floorboard.
8.     Affiant knows the driver, William L. [sic] Shaw is currently on probation for Manufacture/Delivery of Cocaine.
9.     Affiant knows that on Thursday, February 28, 2014, during a debrief of Shannon L Hajek, (white Female, 04/12/82), she stated that Shaw used his right hand to place a baggie of cocaine and heroin into his pants.  Hajek stated this occurred

while he failed to pull over upon the sight of our emergency lights. Hajek stated she knows that Shaw is a drug dealer in the S. 16th Street and W. Windlake Avenue area. Hajek stated prior to being stopped, Shaw conducted a drug transaction at an unknown location.

10.    Affiant knows at 2:25 am, on Friday, 28 February 2014 Deputy Inspector Terrence Gordon of the City of Milwaukee Police Department authorized a strip search of William L Shaw. Affiant knows at 4:25 am, officers attempted a strip search. Shaw refused to comply with officers commands to turn out, exposing his buttock region. Shaw clenched his buttocks, solidifying his body.

11.    Affiant knows at 4:25 am Shaw freely stated, "I don't care"! As long as you guys (policy) don't get it!

12.    Affiant knows that since Shaw refused to cooperate with the strip search officers of the Milwaukee Police Department have been observing Shaw to ensure he does not remove any contraband from his anal cavity and attempt to hide it elsewhere.

13.    Shaw possessed $400.00 in US Currency (3 one hundred dollar bills, 4 twenty dollars bills, 1 ten dollar bill, 2 five dollar bills) and Shaw indicated that he is not currently working.

14.    Affiant knows from training and experience that individuals who sell and/or purchase narcotics, will commonly conceal narcotics in buttocks and anal cavity to avoid detection from police officers.

15.    Through training, experience and discussions with other experience law enforcement officers, Affiant is familiar with the ways in which drug traffickers and users conduct their unlawful trade, including their methods of distribution, their utilization of communication devices, their use of coded communications to conduct their transactions, the employment of counter surveillance, their use of false or fictitious identities and their utilization of various forms of properly to store and/or conceal their controlled substances, monies and other fruits of illegal activities. Based on Affiant's training and experience, Affiant knows that individuals involved in drug use frequently conceal narcotics in their buttocks and anal cavity to avoid detection by officers.

16.    Affiant believes that the search of William L. [sic] Shaw will constitute evidence of the crimes of Possession of Control substance in violation of Wisconsin statutes 961.41. **End of Affidavit**.

**Answering Paragraph 61**: **Denies the allegations contained therein; affirmatively assert**

**that Officer Antoniak's February 28, 2014 affidavit speaks for itself.**

62.    Line – 5 of the Affidavit: Mr. Shaw had not committed any offense, nor was there an offense committed at 3006 S. 27th Street at the 6th District Milwaukee Police Department rendering this statement false.

**Answering Paragraph 62**: **Denies the allegations contained therein.**

63.    Line – 6 of the Affidavit: Mr. Shaw had not committed any traffic violation nor did the vehicle have defective regestration [sic] lamps. Furthermore, upon information and

belief there isn't any evidence of a black digital scale that was allegedly found inside of the vehicle, ie, pictures, chair of custody reports, or itemized evidentiary property documents, rendering this statement false.

**Answering Paragraph 63**:  **Denies the allegations contained therein.**

64.     Line – 7 of the Affidavit:  Upon information and belief, defendant Officer Michael Antoniak had filed to include critical determinative information such as the alleged drug–kit and 17 corner cut baggies containing remnants of suspected heroin, that was inside of a womans [sic] purse belonged to Shannon L Hajek who had been arrested for said drug kit and possession of, inwhich [sic] she was the sole owner of the purse constituting deliberate disregard for the truth.

**Answering Paragraph 64**:  **Denies the allegations contained therein.**

65.     Line – 8 of the Affidavit:  Falsely states William L Shaw was on probation for Manufacture/Delivery of Cocaine, Plaintiffs name is (William R Shaw) not William L Shaw as being purported within the search warrant and affidavit.

(A)     As a means to strategicly [sic] deceive Judge David Borowski while simultaneously in furtherance, depriving Plaintiff Mr. Shaw of his constitutional rights; Defendant officer Michael Antoniak authored the search warrant affidavit that excluded the critical essential facts and circumstances surrounding the arrest and the on-going incident that followed.

(B)     Defendant Michael Antoniak had constructed the search warrant affidavit in such a way that I clearly suggested that Mr. Shaw had been responsible for the drug kit and 17 corner cut bags of suspected heroin contained inside of a womans [sic] purse that was allegedly found during the search of the vehicle; but had intentionally failed to include significant facts such as:  the identity of the owner of the purse, what other contents the purse contained, the arrest and charges of the owner of the purse incurred, and her criminal history, _____

(C)     After being arrested and taken into custody, during the prisoner processing, Shannon L Hajek provided fraudulent information concerning Mr. Shaw actions to Defendant officers who failed to coborrate, [sic] verify, investigate, properly asses [sic] the information that was given.

(D)     In exchange for aforementioned information Shannon L Hajek was immediately released from police custody and any pending charges concerning the contraband that was contained inside of her purse was not forwarded to the District Attorney's Office for prosecution; thus, the Defendant Officers had brokered a deal with Hajek.

(E)     After Shannon L Hajek's arrest, Defendant Officers Michael Antoniak, Kristopher Maduscha, and Unknown Police Sergeant had known or reasonably should have known that the information provided by Hajek was fraudulent and unreliable, and that because she was found to be in possession of contraband she would do or say anything to avoid incarceration and prosecution.

(F)    Plaintiff William R Shaw is of Afro decent [sic] and Shannon L Hajek is a white Caucasian female date of birth 4/12/82 who were both subsequently arrested on February 27, 2014 and although Mr. Shaw did not have contraband on his person at any point during this incident, before or after, and Hajek was found to be in possession of felony contraband that was contained within her purse by Defendant Officer's Michael Antoniak, and Kristopher Maduscha upon arrest; Mr. Shaw had been subjected to differential bias treatment and was exclusively targeted by Defendant officer's involved for self serving purposes and not for the administration of justice.

**Answering Paragraph 65**:  **Denies the allegations contained therein.**

66.    Line – 9 of the Affidavit:  Officer Michael Antoniak had failed to include critical determinative information such as Shannon L Hajek was newly arrested, and that she was a known confidential police informant constituting a reckless disregard for the truth omitted fact.

Furthermore, defendant Antoniak had failed to corroborate any of the false information that was provided to him by Hajek, nor was any of the information reliable or trustworthy, on the basis that at no point during this entire incident contraband was never found on Plaintiff Shaw's person, thus rendering the unfounded, whimsical allegations within the affidavit false.

**Answering Paragraph 66**:  **Denies the allegations contained therein.**

67.    Also within Line – 9 of the Affidavit:  It alleges that Shannon L Hajek only claimed that Mr. Shaw used his right hand to place drugs into his pants; with no mention of placing anything into his rectal cavity, thus there was no nexus between the allegation and Mr. Shaws [sic] rectal cavity, the area sought to be searched.

**Answering Paragraph 67**:  **Denies the allegations contained therein.**

68.    Line – 11 of the Affidavit:  Mr. Shaw at no point made any such statement, and again no contraband was ever recovered from his person during this entire incident.

**Answering Paragraph 68**:  **Denies the allegations contained therein.**

69.    Line – 13 of the Affidavit:  Mr. Shaw advised Defendant officers that he was a full-time student at MATC and receives student financial aid.

**Answering Paragraph 69**:  **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

70.    Lines 14-16 of the Affidavit:  Are mere conclusionary [sic] speculations and affirmations of suspicions and beliefs, without any statements of adequate supporting facts.

**Answering Paragraph 70**:  **Denies the allegations contained therein.**

71.     Defendant Antoniak had failed to include and omitted Shannon L Hajeks [sic] status within the affidavit regarding the statements she provided and the circumstances of; inwhich [sic] she had been arrested for the contraband that was contained inside of her purse, and that she was an active police informant, who had some type of criminal history.

**Answering Paragraph 71**:  **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

72.     Moreover Shannon L Hajeks [sic] statement lacked the indicia of reliability, substantial questions surround her reliability; such as: (How Hajek had known Mr. Shaw) (What was Hajek doing in the vehicle?); (How or if she knew how to identify crack cocaine and herion? [sic]) (How did you know an alleged drug deal occurred?) (When Mr. Shaw allegedly placed drugs down his pants did he put them in his front pockets or back?) (Was the alleged baggie of crack cocaine and herion, [sic] small like dime bags, meduim [sic] size, or a substantial amount?)

Thus, the two-prong test of Aguilar v. Texas was not met in this instance, requiring a Franks hearing analys [sic] for insuffientcy [sic] and lack of probable cause.

**Answering Paragraph 72**:  **The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore, denies the same.**

73.     Both the affidavit and the search warrant contains a name of an unknown person (William L Shaw) 6 times, and at no point of time during this incident did Plaintiff William R Shaw provide Defendant officers with any other name, and upon arrest Mr. Shaw had provided officers Antoniak and Maduscha with a photo school identification card.

**Answering Paragraph 73**:  **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

74.     After the strip search that turned into a visaul [sic] body cavity search Plaintiff William R Shaw was transported from the Police Administration Building to Aurora Sinai Medical Center located at 945 N 12th St., Milwaukee, WI 53233 by Defendant officers Michael Antoniak and Kristopher Maduscha on 2/28/14.

**Answering Paragraph 74**:  **Denies the allegations contained therein.**

75.     Plaintiff Shaw was taken through the emergency entrance straight to and admitted to a patients room.

**Answering Paragraph 75**: **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

76. Mr. Shaw was handcuffed to the bed and both Defendant officers Antoniak and Maduscha remained present inside of the room with Mr. Shaw.

**Answering Paragraph 76**: **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

77. Physician Assistant Christopher Ellingsen entered Mr. Shaw's room inquiring as to what was going on to Defendant Officers Antoniak and Maduscha.

**Answering Paragraph 77**: **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

78. Officer Antoniak informed PA Christopher Ellingsen that Mr. Shaw had hidden drugs in his rectum, and that he (PA Ellingsen) needed to perform a rectal cavity search on Mr. Shaw.

**Answering Paragraph 78**: **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

79. PA Christopher Ellingsen then left out the room stating he would return shortly.

**Answering Paragraph 79**: **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

80. PA Ellingsen returned and handed Mr. Shaw a 'consent to treat form', and requested Mr. Shaw to sign it.

**Answering Paragraph 80**: **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

81. As Mr. Shaw began reading the consent form, PA Christopher Ellingsen explicitly informed officers Antoniak and Maduscha that he (Ellingsen) would not perform a cavity search without Mr. Shaw's consent.

**Answering Paragraph 81**: **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

82.    Defendant officers became angry, Michael Antoniak then told PA Ellingsen to "step in the hallway."

**Answering Paragraph 82**:  **Denies the allegations contained therein.**

83.    Both PA Christopher Ellingsen and Officer Michael Antoniak went into the hallway, and when they came back into the room, PA Elingsen insisted and made multiple attempts to persuade Mr. Shaw to sign the consent to treat form; Mr. Shaw responded by explaining to PA Ellingsen that he had been stripped searched and humiliated by Defendant officers, and that he was scard [sic] for his life and that the officers were going to plant drugs on him, based on their eager insistence to further deprive him of his rights.

Mr. Shaw continued to explain that he has maintained that he did not have any drugs in his rectum, Mr. Shaw began to cry and requested PA Ellingsen for help; Pa Ellingsen stated that he was unable to do so because he was only a Physician Assistant and they Antoniak, Maduscha were cops.

**Answering Paragraph 83**:  **Lacks knowledge or information sufficient to form a belief as to**

**the allegations contained therein, and therefore, denies the same.**

84.    Defendant officers kept aggressively insisting that PA Christopher Ellingsen perform the body cavity search on Mr. Shaw without his consent, because they had a warrant, PA Ellingsen again stated that he wouldn't do it.

**Answering Paragraph 84**:  **Denies the allegations contained therein.**

85.    After leaving with the search warrant and attached affidavit, PA Ellingsen spoke with Dr. Coogan, risk management, the house supervisor, and then to Randle who after speaking to their lawyer stated "that the search warrant is not the correct paperwork necessary to do a rectal search against the patients will"; after reviewing the warrant and attached affidavit.

**Answering Paragraph 85**:  **Lacks knowledge or information sufficient to form a belief as to**

**the allegations contained therein, and therefore, denies the same.**

86.    In turn Christopher Ellingsen provided this same information to Defendant Officers Michael Antoniak and Kristopher Maduscha, who inturn [sic] told PA Ellingsen, despite the information concerning the defectivness [sic] of the search warrant, they were going to transport Mr. Shaw to another hospital.  Thus, officers Antoniak and Maduscha was explicitly made aware that the search was insufficient, and could not be used to effectuate the rectal search against Mr. Shaw's will prior to making their collective decision to transport Mr. Shaw to another hospital.

**Answering Paragraph 86**:  **Denies the allegations contained therein.**

87. Instead of seeking to correct the deficiency of the search warrant and attached affidavit with Judicial Clarification and Redress, officers Antoniak, Maducha [sic] and their supervisors decided to "Hospital Shop" finding a hospital that wouldnt [sic] contest the validity of the search warrant, and would do their (MPD's) bidding withouth regard of Mr. Shaw's rights against his will at all cost, and by any means necessary, and that hospital was: (Wheaton Franciscan Healthcare – St. Francis located at 3237 S. 16th St. Milwaukee, WI 53215).

**Answering Paragraph 87**:  **Denies the allegations contained therein.**

88. Mr. Shaw was transported to St. Francis Hospital by Defendant Officers Antoniak and Maduscha and was received at the Emergency entrance and taken to a patients room.

**Answering Paragraph 88**:  **Lacks knowledge or information sufficient to form a belief as to**

**the allegations contained therein, and therefore, denies the same.**

89. Mr. Shaw was handcuffed to the bed and both Defendant officers Michael Antoniak and Kristopher Maduscha had remained inside of the room maintain constant observation of Mr. Shaw.

**Answering Paragraph 89**:  **Lacks knowledge or information sufficient to form a**

**belief as to the allegations contained therein, and therefore, denies the same.**

90. Physician Assistant Daniel Teska then entered the room; immediately inquiring as to what was going on to both officers, inwhich [sic] Michael Antoniak responded by stating that Mr. Shaw had drugs concealed in his rectum, and that he wanted Teska to perform a rectal cavity search on Mr. Shaw, and that he had a signed search warrant.

**Answering Paragraph 90**:  **Lacks knowledge or information sufficient to form a belief as to**

**the allegations contained therein, and therefore, denies the same.**

91. PA Daniel Teska briefly inspected the search warrant, and then asked Mr. Shaw to sign a consent to treat form, so that he could perform the procedure of the rectal cavity search; Mr. Shaw responded by informing PA Teska that he didn't have any drugs, and that he had already been stripped search thoroughly and that the police were trying to plant drugs on him.

**Answering Paragraph 91**:  **Lacks knowledge or information sufficient to form a belief as to**

**the allegations contained therein, and therefore, denies the same.**

92. Defendant PA Daniel Teska then stated to Mr. Shaw that he shouldnt [sic] worry about anything if he (Shaw) didn't have nothing on him, and to just sign the consent form so we could just get this over with." Officer Michael Antoniak then 'angerily' [sic] shouted "that he

was through wasting time, and that Mr. Shaw didnt [sic] have any rights" Defendant Michael Antoniak; went on to threaten, "were [sic] going to get the drugs one way or another."

**Answering Paragraph 92**:  **Denies the allegations contained therein.**

93.     Defendants PA Daniel Teska and Kristopher Maduscha readily agreed with Antoniak.

**Answering Paragraph 93**:  **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

94.     Officers Michael Antoniak, Kristopher Maduscha and PA Daniel Teska began to place gloves onto their hands, and as Antoniak and Maduscha started walking towards Mr. Shaw, both Defendant officers were menacingly glaring directly at Mr. Shaw, causing Mr. Shaw to become imobile [sic] with overwhelming fear and anxiety, one of the officers also began reaching toward their utility belt as if reaching for a weapon further intimidating Mr. Shaw and visually [sic]indicating thatthey (Defendants) would be willing to mortally harm him if need be.

**Answering Paragraph 94**:  **Denies the allegations contained therein.**

95.     At the same time Defendant PA Daniel Teska told Mr. Shaw very sternly to pull down his pants and underwear, Mr. Shaw refused, and began pleading with the Defendants.

**Answering Paragraph 95**:  **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

96.     Defendant PA Daniel Teska then aggressively stated to Mr. Shaw that he (Teska) would pull them down for him then, with a sardonic grin on his face.

**Answering Paragraph 96**:  **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

97.     PA Teska then yanked Mr. Shaw's pants and underwear down very quickly and inserted his fingers into Mr. Shaws rectum, without a privacy curtain and while the patients room door was open, exposing him to a public hallway during the intimant [sic] humiliating search.

**Answering Paragraph 97**:  **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

98.     Plaintiff William R Shaw then yelled out in pain, and stated that he was being violated and that 'this wasnt [sic] right'; Defendant officers Michael Antoniak and Kristopher Maduscha began laughing boisterously at Mr. Shaws expense further degrading and humiliating him and drawing public spectators to the door while Mr. Shaws intimant [sic] areas was exposed.

**Answering Paragraph 98**:  **Denies the allegations contained therein.**

99.     Defendant PA Daniel Teska had conducted the rectal search without Mr. Shaws [sic] consent, against his will, and adament [sic] refusals, while he was hand-cuffed to the bed.

**Answering Paragraph 99**:  **Lacks knowledge or information sufficient to form a belief as to**

**the allegations contained therein, and therefore, denies the same.**

100.     No contraband was found on Mr. Shaw's person or inside of his buttox [sic] or his rectal cavity.

**Answering Paragraph 100**:  **Admits the allegations contained therein.**

101.     Out of desperation, PA Daniel Teska offered Defendant Officers:  Michael Antoniak and Kristopher Maduscha to conduct a more extensive search by means of x-raying Mr. Shaw; both officer's agreed, PA Teska then ordered a "KUB" x-ray of his own volition, and without justification.

**Answering Paragraph 101**:  **Lacks knowledge or information sufficient to form a belief as**

**to the allegations contained therein, and therefore, denies the same.**

102.     Mr. Shaw was x-rayed twice by unknown defendant Radiologist or X-Ray tech, without Mr. Shaw's consent, and despite the fact there was no indication or evidence of Mr. Shaw swallowing/ingesting drugs.  Inwhich [sic] Mr. Shaw's entire torso, abdomin [sic] and pelvic area was doubly exposed for an extended period of time to radiation during said KUB x-ray.

**Answering Paragraph 102**:  **Lacks knowledge or information sufficient to form a belief as**

**to the allegations contained therein, and therefore, denies the same.**

103.     Unknown Radiologist or X-Ray tech had failed toprovide Mr. Shaw with a protective plated sheild [sic] while the x-ray took place; which is a method that is standard procedure and commonly utilized to protect patients from harmful exposure of radiation during x-rays.

**Answering Paragraph 103**:  **Lacks knowledge or information sufficient to form a belief as**

**to the allegations contained therein, and therefore, denies the same.**

104.     As a result no contraband was found on Mr. Shaws [sic] person and or inside of his rectal cavity or abdominal or pelvic area.

**Answering Paragraph 104**:  **Admits the allegations contained therein.**

105.    Defendants Michael Antoniak, Kristopher Maduscha and Daniel Teska were all angry at the negative results of the x-ray which no foreign bodies were found.

**Answering Paragraph 105:  Denies the allegations contained therein.**

106.    Subsequently, Mr. Shaw was transported back to the 6th District of Milwaukee Police Station by Officers Michael Antoniak, and Kristopher Maduscha, no contraband was ever found on Mr. Shaw's person, before Mr. Shaw was taken back into the District he was made to wait inside of the police vehicle with Officer Maduscha for about 30 minutes while Antoniak went to go "fix and alter" the police reports, per Maduscha.

**Answering Paragraph 106**:  **Denies the allegations contained therein.**

107.    Through-out this entire incident Mr. Shaw had maintained that he didn't have any contraband on his person and or in his buttox [sic] and or inside his rectal cavity.

**Answering Paragraph 107**:  **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

108.    Mr. Shaw was never charged or convicted with any drug related crime or otherwise.

**Answering Paragraph 108**:  **Admits that Plaintiff was not charged with or convicted of any drug related crimes as a result of his February 27, 2014 arrest.**

109.    Mr. Shaw had remained in custody for nearly 120 days for a sanction from his probation officer.

**Answering Paragraph 109:  Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

110.    Mr. Shaw filed a complaint with the Milwaukee Police Department internal Affairs Division regarding this incident.

**Answering Paragraph 110**:  **Admits the allegations contained therein.**

111.    On September 30, 2015 Police Sergeant William C. Walsh of the Internal Affairs Division went to Central Booking to inspect room 520.  Sgt. Walsh was informed by Police Lieutenant Phil Henschel of the Milwaukee Police Department that room 520 did not exist.

Lt. Henschel went on to state room 520 previously existed as part of the old Central Booking prior to March of 2014, and it was at the time designated as a trip search area, with no cameras or recording devices in it.

Thus, no documents or verifiable proff [sic] was provided by MPD to disprove Mr. Shaw's allegation to the MPD Internal Affairs Division.

**Answering Paragraph 111**:  **Admits the allegations contained in the first and second paragraphs of No. 111; lacks knowledge as to the meaning of "verifiable proff" contained in the third paragraph, and as a result, denies the allegations contained therein.**

112.    Upon information and belief, Defendant Lieutenant Phil Henschel had known or reasonably should have known arrestees were being subjected to various degrees of strip searches in full view and or in the presence of a video surveillance camera, and when questioned about it by Internal Affairs Police Sergeant William C. Walsh Lt. Henschel knowingly provided false information to Sgt. Walsh, claiming that room 520 at Central Booking Section didn't have a video surveillance camera equipped during the searches of Plaintiff Mr. Shaw that occurred on 2/28/14 or anytime prior to the destruction of the room in order to decieve [sic] and conceal wrong doing by the MPD.   Thus Lt. Henschel deliberately hindered the Internal Affairs Investigation.

**Answering Paragraph 112:  Denies the allegations contained therein.**

113.    Mr. Shaw eventually received a letter from Internal Affairs stating that no misconduct had been found with Defendant officers [sic] actions.

**Answering Paragraph 113:  Admits the allegations contained therein.**

114.    Mr. Shaw also filed a complaint with the (Wisconsin Department of Safety and Professional Services) regarding the misconduct of PA Daniel Teska, and others medical staff, notifying them of the entire incident.

**Answering Paragraph 114**:  **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

115.    As a result Defendant PA Daniel Teska was contacted by the Wisconsin Department of Safety and Professional Services as well as other parties of the complaint, and made to respond to the above complaint; inwhich [sic] PA Teska deliberately provided a falsified statement that inaccurately reflected what occurred at Saint Francis Hospital concerning his direct involvement and actions in this incident.

Thus Teska had provided false information to the investigator in-order [sic] to conceal wrong-doing and impedad [sic] the investigation.

**Answering Paragraph 115**:  **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

116.    Mr. Shaw eventually received a letter from the Wisconsin Department of Safety and Professional Services that no misconduct had been found with the Defendants.

**Answering Paragraph 116**:  **Lacks knowledge or information sufficient to form a belief as to the allegations contained therein, and therefore, denies the same.**

117.    As a result of the illegal searches perpetrated and allowed by these Defendant Officers, Physician Assistant, Radiologist or X-Ray Technician, Mr. Shaw experienced physical pain, emotional distress, humiliation, and trauma.

**Answering Paragraph 117**:  **Denies any wrongdoing on the part of the Answering Defendants; lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore, denies the same.**

<div align="center">

**Count I – 42 U.S.C. §1983**
**Due Process**
**(Against:  Thomas J Slowinski, Michael Antoniak, Kristopher Maduscha,**
**Timothy A Hauf, Terrence Gordon, and other unknown**
**MilwaukeePolice Department Employees and Officers)**

</div>

118.    Each Paragraph of this Complaint is incorporated as if fully stated herein.

**Answering Paragraph 118**:    **Defendant realleges, and incorporates by reference, the answers to the allegations in the preceding paragraphs.**

119.    As described more fully above Defendants denied Plaintiff due process and equal protection laws in that they engaged in arbitrary government actions and ommissions [sic] that deprived him of his liberty violated his right to bodily integrity, and was so malfeasant as to shock the conscience.

**Answering Paragraph 119**:  **Denies the allegations contained therein.**

119.    [sic] This misconduct described in this Count was undertaken with malice, willfulness, reckless indifference to the rights of others, and was objectively unreasonalble. [sic].

**Answering Paragraph 119 [sic]:  Denies the allegations contained therein.**

120.    The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

**Answering Paragraph 120**:  **Denies the allegations contained therein.**

121.    As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to emotional distress and anguish.

**Answering Paragraph 121**:  **Denies the allegations contained therein.**

<div align="center">

**Count II – 42 U.S.C. §1983**
**Fourth Amendment**
**(Against:  Michael Antoniak, Kristopher Maduscha, Thomas J Slowinski,**
**Timothy A Hauf, and other unknown MPD Employees and Officers)**

</div>

122.    Each Paragraph of this Complaint is incorporated as if restated fully herein.

**Answering Paragraph 122**:    **Defendant realleges, and incorporates by reference, the answers to the allegations in the preceding paragraphs.**

123.    As described in the preceding paragraphs, the Defendant officers violated Plaintiffs [sic] Fourth Amendment right to be free from unreasonable search and seizure.

**Answering Paragraph 123**:  **Denies the allegations contained therein.**

124.    As described in the preceding paragraphs, the Defendant Officers violated Plaintiffs [sic] Fourth Amendment right in that they seized Plaintiff without justification and without probable cause and conducted an illegal search of his vehicle, and an illegal search of his body by conducting an unauthorized, unconsented, very intrusive and humiliating strip search that turned into a visaul [sic] body cavity search ordering the Plaintiff to life his scrotums and penis, and then ordering him to bend over and spread his buttox [sic] until his anus was fully exposed while in full view of a video surveillance camera while being visaully [sic] observed and recorded through the same.

**Answering Paragraph 124**:  **Denies the allegations contained therein.**

125.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs constitutional rights.

**Answering Paragraph 125**:  **Denies the allegations contained therein.**

126.    The misconduct described in this Court was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**Answering Paragraph 126**:  **Denies the allegations contained therein.**

127.   The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee is liable for their actions.

**Answering Paragraph 127**:  **Denies the allegations contained therein.**

128.   As a result of unjustified and unreasonable conduct of unjustified and unreasonable conduct of the Defendant officers, plaintiff has suffered injuries, including emotional destress. [sic]

**Answering Paragraph 128**:  **Denies the allegations contained therein.**

<div align="center">

**Count III – 42 U.S.C. §1983**
**Fourth Amendment**
**(Against:  Daniel Teska, Unknown Radiologist or X-Ray tech,**
**Michael Antoniak, Kristopher Maduscha)**

</div>

129.   Each Paragraph of this complaint is incorporated as if restated fully herein.

**Answering Paragraph 129**:   **Defendant realleges, and incorporates by reference, the answers to the allegations in the preceding paragraphs.**

130.   As described in the preceding paragraphs, the Defendant Officers, Physician Assistant, and Radiologist or X-Ray tec [sic] violated Plaintiffs [sic] Fourth Amendment right to be free from unreasonable searches and seizure.

**Answering Paragraph 130**:  **Denies the allegations contained therein.**

131.   As described in the preceding paragraphs, the Defendant Officers, Physician Assistant, and Radiologist or X-Ray Tech violated Plaintiffs Fourth Amendment right without justification and without probable cause and conducted an illegal search of his body by forcing fingers inside of his rectum while having the door to the patients room fully open and exposing him to public spectators view all while the humiliating search and then x-raying his abdominal and pelvic area.

**Answering Paragraph 131**:  **Denies the allegations contained therein.**

132.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiff's constitutional rights.

**Answering Paragraph 132**:  **Denies the allegations contained therein.**

133.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**Answering Paragraph 133**:  **Denies the allegations contained therein.**

134.    The misconduct described in this Count was undertaken by Defendents [sic] within their employment and under color of law such that their employer, City of Milwaukee, Wheaton Franciscan Healthcare – St. Francis is liable for their actions.

**Answering Paragraph 134**:  **Denies the allegations contained therein.**

135.    As a result of unjustified and unreasonable conduct of Defendant Officers, Physician Assistant, Radiologist X-Ray Tech, Plaintiff has suffered injuries, including emotional distress.

**Answering Paragraph 135**:  **Denies the allegations contained therein.**

<div align="center">

**Count IV – 42 U.S.C. §1983**
**False Arrest**
**(Against:  Michael Antoniak and Kristopher Maduscha)**

</div>

136.    Each Paragraph of this Complaint is incorporated as if fully stated herein.

**Answering Paragraph 136**:  **Defendant realleges, and incorporates by reference, the**

**answers to the allegations in the preceding paragraphs.**

137.    As described above, Defendant Officers falsely arrested and unlawfully detained Plaintiff without justification and without probable cause.

**Answering Paragraph 137**:  **Denies the allegations contained therein.**

138.    The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

**Answering Paragraph 138**:  **Denies the allegations contained therein.**

139.    As a result of unjustified and unreasonable conduct of the Defendant Officers, Plaintiff has suffered injuries, including emotional distress.

**Answering Paragraph 139**:  **Denies the allegations contained therein.**

<div align="center">

**Count V – 42 U.S.C. §1983**
**Failure to Interven [sic]**
**(Against:  Michael Antoniak, Kristopher Maduscha,**

</div>

**and other Unknown MPD Employees and Officers, Timothy A Hauf)**

140.    Each Paragraph of this Complaint is incorporated as if fully stated herein.

**Answering Paragraph 140:  Defendant realleges, and incorporates by reference, the answers to the allegations in the preceding paragraphs.**

141.    As described more fully above, one or more of the Defendants had a reasonable opportunity to prevent the violation of Plaintiffs constitutional rights as set forth above had he or she been inclined, but failed to do so.

**Answering Paragraph 141:  Denies the allegations contained therein.**

142.    The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to the rights of others.

**Answering Paragraph 142:  Denies the allegations contained therein.**

143.    The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

**Answering Paragraph 143:  Denies the allegations contained therein.**

144.    As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to emotional distress and anguish.

**Answering Paragraph 144:  Denies the allegations contained therein.**

<div align="center">

**Count VI – 42 U.S.C. §1983**
**Conspiracy**
**(Against:  Michael Antoniak, Kristopher Maduscha, Thomas J Slowinski)**

</div>

145.    Each Paragraph of this Complaint is incorporated as if fully stated herein.

**Answering Paragraph 145:  Defendant realleges, and incorporates by reference, the answers to the allegations in the preceding paragraphs.**

146.    As described more fully above, Defendant Officers reached an agreement among themselves to deprive Plaintiff of his constitutional rights.

**Answering Paragraph 146:  Denies the allegations contained therein.**

147. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

**Answering Paragraph 147**:  **Denies the allegations contained therein.**

148. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**Answering Paragraph 148**:  **Denies the allegations contained therein.**

149. The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

**Answering Paragraph 149**:  **Denies the allegations contained therein.**

150. As a direct and proximate result of the illicit prior agreement referenced above concerning the strip search and visaul [sic] body cavity search of Mr. Shaw, Plaintiff rights were violated and he suffered injuries, including but not limited ot emotional distress, as described above.

**Answering Paragraph 150**:  **Denies the allegations contained therein.**

<div align="center">

**Count VII – 42 U.S.C. §1983**
**Supervisoray [sic] Liability**

</div>

151. Each Paragraph of this Complaint is incorporated as if fully stated herein.

**Answering Paragraph 151**:  **Defendant realleges, and incorporates by reference, the**

**answers to the allegations in the preceding paragraphs.**

152. As described more fully above, Defendants Edward Flynn, and Terrence Gordon, knew or reasonably should have known that Defendants Timothy A Hauf, Michael Antoniak, Kristopher Maduscha, Thomas J Slowinski would violate citizens rights in one or more of the ways described above, and or knew or reasonably known about officers engaging in improper searches, and facilitated, approved, condoned, turned a blind eye to, and or purposefully ignored the continued exploitations of arrestees being subjected to various degrees of nude searches, including but not limited to strip searches, and visaul [sic] body cavity searches in full view and or in the presence of a video surveillance camera, while being visaully [sic] observed and recorded through the same, inside of room 520 at the "Central Booking Section" of the Police Administration Building that was specifically designated for said searches.

**Answering Paragraph 152**:  **Denies the allegations contained therein.**

153. As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to emotional distress and anguish.

**Answering Paragraph 153**: **Denies the allegations contained therein.**

<div align="center">

### Count VIII – 42 U.S.C. §1983
### Municipal liability
### And pursuant to Monell v. Dep't of Social Services, 436 U.S.
### 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)

</div>

154. Each Paragraph of this Complaint is incorporated as if fully stated herein.

**Answering Paragraph 154**: **Defendant realleges, and incorporates by reference, the**

**answers to the allegations in the preceding paragraphs.**

155. As described more fully above, the policy, customs, and usages were those of Milwaukee County acting through its highest-ranking final authoritive [sic] decisionmaker [sic] and policymaker Chief Edward Flynn with respect to the Milwaukee Police Department caused the Plaintiff Mr. Shaw's deprivation of constitutional rights.

**Answering Paragraph 155**: **Denies the allegations contained therein.**

156. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**Answering Paragraph 156**: **Denies the allegations contained therein.**

157. As a result of unjustified and the unreasonable policy, custom, and usage, though unwritten of subjecting arrestees to various degrees of nude searches, including but not limited to strip searches, and visaul [sic] body cavity searches in full view and or in the presence of a video surveillance camera, while being visually [sic] observed and recorded through the same, inside of room 520 at the "central Booking Section" of the Police Administration Building that was specifically designated for said searches and was a wide-spread practice that was commonly utilized through-out the Milwaukee Police Department by its employees and officers; "was the moving force" behind the injuries incurred and suffered by Mr. Shaw including emotional distress.

**Answering Paragraph 157**: **Denies the allegations contained therein.**

**Count IX – 42 U.S.C. §1983**
**Conspiracy**
**(Against: Michael Antoniak, Kristopher Maduscha, Daniel Teska, and other Unknown**
**Milwaukee Police Department Employees and Officers)**

158.    Each Paragraph of this Complaint is incorporated as if fully stated herein.

**Answering Paragraph 158: Defendant realleges, and incorporates by reference, the answers to the allegations in the preceding paragraphs.**

159.    As described more fully above, Defendant officers reached an agreement among themselves to deprive Plaintiff of his constitutional rights.

**Answering Paragraph 159: Denies the allegations contained therein.**

160.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in Joint activity.

**Answering Paragraph 160: Denies the allegations contained therein.**

161.    This misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to the rights of others.

**Answering Paragraph 161: Denies the allegations contained therein.**

162.    The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

**Answering Paragraph 162: Denies the allegations contained therein.**

163.    As a direct and proximate result of the illicit prior agreement referenced above, concerning the rectal cavity search of Mr. Shaw, Plaintiff's rights were violated and he suffered injuries, including but not limited to emotional distress, as described above.

**Answering Paragraph 163: Denies the allegations contained therein.**

**Count X – 42 U.S.C. §1983**
**Indemnification**

164.    Each Paragraph of this Complaint is incorporated as if fully stated herein.

**Answering Paragraph 164: Defendant realleges, and incorporates by reference, the answers to the allegations in the preceding paragraphs.**

165.    Wisconsin law, Wisc. Stat. § 895.46, requires public entities to pay any tort Judgment for damages for which employees are liable within the scope of their employment activities.

**Answering Paragraph 165:  The allegations contained therein are legal conclusions to which no answer is required; in the event that the Court determines that the allegations require a response, lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore, denies the same.**

166.    The Defendant Officers are or were employees of the Milwaukee Police Department, who acted within the scope of their employment in committing the misconduct described herein.

**Answering Paragraph 166:  Admits that the Answering Defendant was Milwaukee Police Department employees in February 2014; denies any wrongdoing on the part of any Answering Defendant; lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein, and therefore, denies the same.**

## AFFIRMATIVE DEFENSES

AS AND FOR AFFIRMATIVE DEFENSES, the answering Defendant, Police Officer Vincent Andrysczyk alleges and states to the Court as follows:

In reference to the federal claims alleged:

1.    Plaintiff's complaint fails to state a claim against Defendant upon which relief can be granted.

2.    Defendant, sued in his individual capacity, is immune from trial and liability under the doctrine of qualified immunity because he acted in good faith, without malice or intent to harm, and his conduct did not violate a clearly established constitutional law or statutory right which a reasonable person would have known;

3. Plaintiff's injuries, if any, were not caused by any policy, practice, or custom of the city of Milwaukee or any of its officers, agents, or employees acting in their individual or official capacities.

4. No punitive damages may be awarded against the city of Milwaukee or any of its officers, agents, or employees acting in their official capacity, ***Newport v. Fact Concert, Inc.*, 453 U.S. 247 (1981)**.

5. The injuries and damaged sustained by Plaintiff, if any, were caused in whole or in part by his own acts or omissions or his failure to mitigate or the acts and omission of persons other than this answering defendant.

6. One or more of Plaintiff's claims may be barred by judicial doctrines known as ***Heck v. Humphrey*, 512 U.S. 477, 487 (1994), *Younger v. Harris*, 401 U.S. 37 (1971)**, or ***Rooker v. Fidelity Trust Co.,* 263 U.S. 413, (1923)** and ***District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983)**.

7. Defendant may be protected by immunities including qualified immunity.

In reference to any state claims possibly alleged:

8. Any claims under Wisconsin state law are subject to the limitations, prerequisites, and immunities contained within Wis. Stat. § 893.80, including notice, damages cap, and the bar against punitive damages.

9. Plaintiff's complaint fails to state a claim against Defendant upon which relief can be granted.

10. The injuries and damaged sustained by Plaintiff, if any, were caused in whole or in part by his own acts or omissions or his failure to mitigate or the acts and omission of persons other than this answering defendant.

Defendant reserves the right to amend this answer to assert additional defenses as discovery proceeds.

WHEREFORE, Defendant Vincent Andrysczyk demands judgment as follows:

A.    For dismissal of the Complaint, on the merits and with prejudice;

B.    For costs and disbursements of this action;

C.    For reasonable actual attorney fees per 42 U.S.C. § 1988; and

D.    For such other and further relief as this court may deem just and equitable.

**A DEMAND IS HEREBY MADE FOR A JURY**

Dated and signed at Milwaukee, Wisconsin this 14th day of December, 2020.

<div style="margin-left: 50%;">

TEARMAN SPENCER
City Attorney

s/Naomi E. Gehling
NAOMI E. GEHLING
Assistant City Attorney
State Bar No. 1061388
800 City Hall
200 East Wells Street
Milwaukee, WI  53202
(414) 286-2601
Email:  ngehli@milwaukee.gov
*Attorneys for Defendants City of Milwaukee,*
*Chief Edward Flynn, Deputy Inspector*
*Terrence Gordon, Sergeant Timothy A.*
*Hauf, Police Officers Michael Antoniak,*
*Vincent Andrysczyk, and Thomas J.*
*Slowinski*

</div>

1032-2019-2099/272673