UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WILLIAM ROBERT SHAW,

    Plaintiff,

v.                                                                                      Case No. 19-C-1059

TERRENCE GORDON, et al.,

    Defendants.

---

## DECISION AND ORDER

---

On December 3, 2021, after hearing testimony from the parties over the course of two days, a jury returned a verdict in favor of Defendants. Specifically, the jury concluded that Defendants did not violate the Fourth Amendment when they stopped Shaw's vehicle, performed a strip-search of Shaw at central booking, or authorized a medical professional to perform a body cavity search and x-ray of Shaw at a hospital. *See* Dkt. No. 238. Shaw initiated the case pro se, but after discovery closed and given that Defendants had not filed a dispositive motion, the Court decided to recruit counsel for the limited purpose of representing Shaw at trial. Ryan Walsh and Amy Miller volunteered to represent Shaw pro bono. *See* Dkt. No. 155. It is difficult for the Court to locate lawyers who are willing and able to volunteer their time and resources to represent prisoner plaintiffs, so the Court is grateful for their willingness to help Shaw and the Court. After capably representing Shaw at trial, Walsh and Miller's commitment concluded when the jury returned its verdict. Shaw is again proceeding pro se. On December 16, 2021, Shaw filed a motion for relief from judgment. Dkt. No. 247. The Court will deny Shaw's motion.

Shaw's motion for relief focuses on an alleged "fraudulent stipulated dismissal of his *Monell* claim against the City of Milwaukee and Defendant Edward Flynn." Dkt. No. 247. According to Shaw, counsel had advised him that they did not believe there was sufficient evidence to prove that the City of Milwaukee had a policy of unreasonably strip-searching arrestees at central booking. Accordingly, Walsh allegedly suggested to Shaw that he dismiss his *Monell* claim to "ease the burden at [the] jury trial" and to avoid confusing the jury. Shaw accepted counsel's advice and, shortly thereafter, the parties stipulated to dismissing the City of Milwaukee and Flynn. Dkt. No. 228. Shaw now regrets his decision and asserts that he did not fully understand the consequences of that decision when he made it.

None of the circumstances described by Shaw suggest that counsel acted fraudulently when they advised him that there was insufficient evidence to prove a *Monell* claim. Shaw briefly describes the evidence he thinks supports a conclusion that the City had a practice or policy of unreasonably strip-searching arrestees at central booking. He asserts that a particular room had been designated to be used for strip-searches, that there was a video camera in that room, that Flynn had an office in the central booking building, and that Defendant Terrence Gordon (who authorized Shaw's strip-search) had toured the building. Shaw also vaguely references discovery responses without specifying what those responses were. Dkt. No. 245 at 5. Even assuming each of these assertions is true, none of them supports a conclusion that the City has a policy of strip-searching arrestees in violation of the Fourth Amendment. The fact that the City at one time had a separate, private room to perform strip-searches suggests that the City made efforts to maintain arrestees' privacy. And the presence of a camera in the room does not mean it was used during strip-searches. In fact, testimony at trial was that there was not only *no* recording of Shaw's strip-search, but no camera in the room. Finally, it is unclear why Flynn having an office in the building

2

or Gordon touring the building has any significance at all to the question of whether the searches conducted on Shaw were constitutional. Thus, it appears that counsel wisely advised Shaw that there was insufficient evidence to prove a *Monell* claim. Because Shaw could not prove his *Monell* claim, it is immaterial that he did not understand the impact on his potential recovery when he agreed to dismiss that claim.

In any event, given the jury's determination that Gordon did not violate the Fourth Amendment when he authorized the strip-search and that Defendants Thomas Slowinski and Timothy Hauf did not violate the Fourth Amendment by the manner in which they conducted the strip search, Shaw's *Monell* claim would have necessarily failed even if he had not agreed to dismiss it. The United States Supreme Court has explained that "neither *Monell* [] nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). This means that because Shaw suffered no constitutional injury at the hands of any Defendant, the fact that a City policy or practice might have allowed unreasonable strip-searches "is quite beside the point." *Id.* Given that there was ample evidence to support the jury's verdict that none of the officers violated Shaw's constitutional rights, the Court finds that he suffered no harm from his decision to dismiss his *Monell* claim prior to trial. Accordingly, the Court will deny his motion for relief.

Shaw also filed objections to the Court's "arbitrary, unlawful, unauthorized, discriminatory judicial substitution during [the] jury trial," to its "oppressive violation of [Shaw's] First (1st) Amendment rights in court proceedings," and to its "decision to make [Shaw] be shackled during the first day of jury trial." Dkt. No. 248. Each of these objections lacks merit.

3

With regard to Shaw's first objection, the Court notes that the case was sent to the jury at the end of the second day of trial. The foreman communicated to the Court that the jury preferred to come back the following day to continue its deliberations. Although I sit in Green Bay, as a courtesy to the parties, the trial was held in the Milwaukee courthouse. Because the trial had been scheduled for only two days, I had planned to be in Milwaukee for only two days and had multiple hearings in other cases scheduled for the following day. So that I might return to Green Bay as planned and avoid canceling my scheduled hearings, Judge Ludwig agreed to take the jury's verdict with the understanding that I would be available to answer any questions the jury might have. Given that both sides had rested and all that was left was to await the jury's verdict, I asked counsel for both parties if they would consent to Judge Ludwig receiving the verdict. Counsel for both parties consented. The following day, after the foreman communicated that the jury had reached a verdict, Judge Ludwig called the case, received the verdict, and polled the jury. The parties raised no issues, and Judge Ludwig made no rulings.

Shaw asserts that he was not informed of this arrangement and that he did not consent to such "a critical legal decision" being made on his behalf. But this was not a critical legal decision; it was an administrative decision that had no impact on Shaw or his rights. As noted, Judge Ludwig did not exercise any discretion in this case; he merely accepted the verdict and polled the jury. Even in criminal cases, any judge sitting in or assigned to the court may receive a verdict where the judge who presided over the trial becomes unavailable. Fed. R. Crim. P. 25(b). In this case, the Court obtained the consent of counsel, and even if Shaw insists that he would have not consented to this arrangement had he been consulted, Shaw fails to show that he suffered any harm. Accordingly, this objection is without merit.

Shaw's second objection is in connection with the Court's refusal to consider motions he filed on his own and its decision to consider only motions filed by his counsel. This objection is also without merit. District courts have broad discretion to manage their dockets in order to promote the efficient resolution of cases. Allowing both Shaw and his counsel to file motions would have required Defendants to respond to potentially duplicative or even contradictory motions, which could have led to confusion and wasted Defendants' and the Court's time and resources. Further, Federal Rule of Civil Procedure 11 requires that every motion be signed by the attorney of record or a party "*if the party is unrepresented,*" suggesting that parties may file their own motions only if they are unrepresented. *See United States v. Bradyshaw*, No. 214MC88MCEKJN, 2018 WL 534120, at *1 (E.D. Cal. Jan. 23, 2018). Finally, the Seventh Circuit has noted that a party has no affirmative right to submit a pro se brief when he is represented by counsel because "representation by counsel and self-representation are mutually exclusive entitlements." *United States v. Turner*, 258 F. App'x 888, 891 (7th Cir. 2007) (holding that once the court provided the defendant with counsel, it had no obligation to consider his filings because he had competent representation). In short, the Court did not err when it refused to consider motions Shaw filed without the assistance of counsel.

Finally, Shaw objects to the Court ordering that he be shackled during the first day of trial. Shaw has been a pretrial detainee awaiting trial in Milwaukee County for four years on charges of First Degree Reckless Homicide arising out of drug distribution and is facing a substantial sentence if convicted. According to the Wisconsin Circuit Court Access website, at least three attorneys have withdrawn from representing him and a fourth has been appointed as stand-by counsel. Based on the seriousness of the charge, his apparent inability to cooperate with counsel, and at the request of the deputy U.S. Marshal who was belatedly placed in charge of Shaw's security, the Court

overruled the objection of Shaw's counsel and decided that, for the safety of those in the courtroom, it was prudent to require that Shaw be shackled, at least during the first day.

The Court was careful to keep the shackles concealed from the jury. Its efforts included having floor-length table skirts around the parties' tables, allowing everyone to remain seated when the jury entered and left the courtroom, moving Shaw between his seat and the witness box outside of the jury's presence, and, for consistency's sake, having the witness who testified after Shaw already seated in the witness box when the jury returned to the courtroom. Having observed Shaw's demeanor during the first day of trial, the Court determined it was unnecessary for him to be shackled for the remainder of the trial. Shaw has offered nothing suggesting that the jury observed that he was shackled during the first day. Given the precautions the Court took to keep the shackles concealed and given the lack of evidence suggesting the jury saw the shackles or otherwise learned that Shaw was in custody during the trial, the Court concludes that this objection lacks merit.

Finally, Shaw notes that corrections officers were seated behind him and that he was required to wear the same clothes all three days of trial. Shaw was proceeding against six Milwaukee police officers, so the corrections officers sitting behind him were just two of many uniformed officers in the courtroom. And, given Shaw's status as a pretrial detainee, it was necessary to have people nearby who could ensure the safety of those in the courtroom, particularly after the Court ruled Shaw should not be shackled. As to his clothes, Shaw was provided with a clean dress shirt and slacks to wear during the trial. It is not uncommon for people to wear the same or similar clothes to court multiple days in a row, particularly if their life circumstances do not require that they own professional clothing. Nothing suggests that the jury even noticed Shaw was wearing the same clothes, let alone that he was prejudiced by doing so.

**IT IS THEREFORE ORDERED** Shaw's motion for relief (Dkt. No. 247) and his objections (248) are **DENIED**.

Dated at Green Bay, Wisconsin this 21st day of December, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge